59 Cal.Rptr.3d 855 (2007)
151 Cal.App.4th 474
IN RE JESSICA C. et al., Persons Coming Under the Juvenile Court Law.
Kern County Department of Human Services, Plaintiff and Respondent,
v.
Gerald W., Defendant and Appellant.
In re Jessica C. et al., Persons Coming Under the Juvenile Court Law.
Kern County Department of Human Services, Plaintiff and Respondent,
v.
Jessica C. et al., Defendants and Appellants.
Nos. F051144, F051283.
Court of Appeal of California, Fifth District.
May 25, 2007.
*856 Beth A. Melvin, South Lake Tahoe, under appointment by the Court of Appeal, for Defendant and Appellant Gerald W.
S. Lynne Klein, Los Angeles, under appointment by the Court of Appeal, for Defendants and Appellants Jessica C. and Brett C.
B.C. Barmann, Sr., County Counsel, Susan M. Gill, Deputy County Counsel, for Plaintiff and Respondent.

OPINION
WISEMAN, J.
This is an appeal from a termination of a guardianship created in a dependency action as the permanent plan for two adolescents, Jessica C. and Brett C. Initially, the maternal grandparents were appointed guardians. After a number of successful years in this home, during which the children bonded to their grandparents and appeared to flourish, the grandmother died. At the same time, the grandfather experienced serious health problems which the juvenile court found prevented him from caring for the children and adequately supervising and protecting them. There are two issues presented on appeal: 1) Should the petition to terminate the guardianship have been initiated under *857 Welfare and Institutions Code[1] section 388 or section 387, and 2) did the juvenile court err by failing to consider whether providing services to the grandfather would preserve the guardianship. We conclude that section 387 controls when the termination of guardianship will lead to children being placed in foster care and that section 366.3 requires that maintenance services be considered before the guardianship is terminated.

FACTUAL AND PROCEDURAL HISTORIES
In June 2001, Jessica and Brett were found to be dependent juveniles pursuant to section 300, subdivision (b), as a result of problems caused by their mother, Cori W.'s, substance abuse. Their father is deceased. After reunification efforts with Cori failed, the court adopted legal guardianship as the permanent plan pursuant to section 366.26 and appointed the maternal grandparents, Colleen and Gerald W., as the children's legal guardians. Dependency jurisdiction was dismissed, but the court reserved jurisdiction pursuant to section 366.4.
Colleen died in 2004. Lori, Cori's twin sister, moved into Gerald's residence. She did so to help run the household and to assist him with caring for the children. Gerald was in poor health and underwent heart surgery in March 2005. He was hospitalized until late May 2005. In early June 2005, Lori died. Since Gerald was overwhelmed with medical problems and emotional stress, he needed assistance in dealing with day-to-day activities. He asked Cori to come live with the family to help out, even though he knew this was not a good decision since Cori still had problems with drugs. In September 2005, respondent Kern County Department of Human Services (department) investigated a child-neglect referral alleging that Cori was living in the home and selling drugs. The referral also reported that Jessica was allowed to bring a 22-year-old boyfriend into the home, and Brett was allowed to watch pornography. Further, Jessica had run away and been missing for several months in late 2005. The department's investigation was inconclusive and ultimately closed.
A second referral was received in May 2006 asserting that Gerald was ill and unable to care for the children and that Cori was using and selling drugs at the home. The investigating social worker learned that the children were not regularly in school and that Brett did not have enough credits to graduate from the eighth grade. Cori was arrested at Gerald's home on June 6, 2006, and was charged with possession of a controlled substance. Several unrelated males were present at the time of the arrest and two were also in possession of drugs. Syringes were found in Cori's room. To make matters worse, Cori admitted that she had smoked marijuana with Jessica in the backyard a week prior to the arrest. Jessica admitted that both she and Brett smoked marijuana on occasion. Gerald was upset when he discovered the children were actively using drugs. Both children told the social worker that their grandfather had been sick. Jessica said that she takes care of her grandfather, doing the cooking and performing other household chores.
The children were placed into protective custody and the department filed a section 388 petition seeking a change of the previous court order and requesting that the *858 guardianship be terminated. In addition, the petition sought to reinstate the dependency proceeding and to have the children's permanent plan be changed to long-term foster care. The court ordered that the children be removed from Gerald's care and that a contested hearing be set on the petition.
The hearing was held on August 23, 2006. After considering the social worker reports and Gerald's testimony, the court ruled:
"We have a grandfather that obviously loves his grandchildren very much, but the Court does find that for a variety of reasons, part of which may be related to his medical problems, the grandfather is no longer able to adequately supervise or protect these children from the substantial risk of serious physical harm or illness and that would be primarily the type of harm or illness that can be harm by using illegal drugs, although they can certainly get into other situations.... [¶] ... [¶] I'm going to find it's not in the best interest of the children to continue with this guardianship; that the grandfather is no longer suitable as a guardian; that doesn't mean he doesn't love them, doesn't want to be the guardian, but that's the Court's finding. I make the finding it's not in the best interest of the children to remain in this legal guardianship and the Court is going to grant the 388 and find that the burden has been met to grant the 388."
We have ordered that the appeals of the children and Gerald be consolidated.

DISCUSSION

I. Applicability of section 387 or 388
The children argue that the department was obligated to file a supplemental petition pursuant to section 387 before removing them from their grandfather's home because the petition seeks the more restrictive placement of foster care. Although section 388 generally governs an application to terminate a guardianship created by the juvenile court when modifying the previous permanent plan order (§ 360; In re Carrie W. (2003) 110 Cal. App.4th 746, 757, 2 Cal.Rptr.3d 38), section 387 applies when the petition seeks to terminate a guardianship and place a child into foster care. Section 388 provides that a juvenile court may change an earlier order creating a legal guardianship "[i]f it appears that the best interests of the child may be promoted by the proposed change of order ...."(§ 388, subd. (c).)
In contrast to section 388, section 387 provides a more detailed procedure where the order sought will change or modify an earlier order by "removing a child from the physical custody of a parent, guardian, relative, or friend and directing placement in a foster home, or commitment to a private or county institution ...." (§ 387, subd. (a).) Section 387, subdivision (b), provides that "[t]he supplemental petition shall be filed by the social worker in the original matter and shall contain a concise statement of facts sufficient to support the conclusion that the previous disposition has not been effective in the rehabilitation or protection of the child or, in the case of a placement with a relative, sufficient to show that the placement is not appropriate in view of the criteria in Section 361.3." The need to file a section 387 petition when termination of the guardianship will result in foster care placement was acknowledged by the court in In re Carlos E. (2005) 129 Cal.App.4th 1408, 29 Cal. Rptr.3d 317, which said:
"Section 366.3 provides that the juvenile court retains jurisdiction over a child as *859 a ward of the court after the court imposes a legal guardianship. It would appear, therefore, that should it become necessary to alter the court's order placing the child with a legal guardian, a section 387 petition would be the appropriate method for obtaining an order detaining the child and placing him or her in foster care." (In re Carlos E., supra, 129 Cal.App.4th at p. 1419, fn. 5, 29 Cal.Rptr.3d 317.)
A section 387 petition requires a bifurcated proceeding. The initial phase is a fact-finding hearing to determine whether the allegations of the supplemental petition are true, including the ultimate fact necessary to modify a previous placement with a parent or relative, and that the previous disposition has been ineffective in protecting the minor. (In re Jonique W. (1994) 26 Cal.App.4th 685, 690-691, 31 Cal. Rptr.2d 601.) In addition, the court must conduct a contested hearing to resolve factual disputes and determine whether the allegations of the supplemental petition are true. (Id. at p. 692, 31 Cal.Rptr.2d 601.)
Section 366.3 recognizes that there may be a need to terminate a guardianship established as the permanent plan for a dependent child. To this end, it sets forth a procedure for notice, evaluation of the problems and possible solutions, and a mechanism by which reunification services to the parent(s) might be reinitiated if the guardianship is terminated. The statute does not, however, specify under which provisionsection 387 or section 388a petition to terminate a guardianship should be filed. The language of California Rules of Court, rule 5.740(c), recognizes that a petition seeking to terminate a guardianship may be brought as either a petition to modify or a petition to supplement the previous order, depending on the circumstances. It provides that "[a] petition to terminate a guardianship established by the juvenile court, to appoint a successor guardian, or to modify [§ 388] or supplement [§ 387] orders concerning the guardianship must be filed in juvenile court." (Cal. Rules of Court, rule 5.740(c), italics added.) The goal remains stability and a permanent home. "If the petition is granted and the court continues or resumes dependency, the court must order that a new plan be developed to provide stability and permanency to the child." (Cal. Rules of Court, rule 5.740(c)(4).)
The concern here, of course, is that the children were removed from Gerald's home and placed into foster care. The legislative policy in California is that foster care should only be used as a temporary method of care. (§ 396.) In addition, reunification with the natural parents or another alternative permanent living situation such as adoption or guardianship is more suitable to a child's well-being than is foster care. (Ibid.) We believe it is for this reason that the Legislature established a more structured procedure when efforts are made to terminate a guardianship in favor of foster care. Consequently, the decision to remove a dependent child from the home of a relative caretaker who has assumed the role of de facto parent for several years cannot be made lightly. "This is particularly true where, as here, the removal decision is made in the postpermanency planning stage of dependency proceedings in which it has been determined that reunification of a dependent child and his or her parents is no longer possible." (In re Jonique W., supra, 26 Cal.App.4th at p. 695, 31 Cal.Rptr.2d 601.) At that point, permanency and stability are the ultimate concerns. (Ibid; In re Stephanie M. (1994) 7 Cal.4th 295, 317, 27 *860 Cal.Rptr.2d 595, 867 P.2d 706; In re Richard C. (1991) 231 Cal.App.3d 1487, 1499, 282 Cal.Rptr. 788 [overriding concern in postpermanency planning stage is to provide stable permanent home where child can develop lasting emotional attachment to caretakers].) Although the statutory scheme allows for using section 388 to seek termination of a guardianship established as a permanent plan (§ 366.3, subd. (b)), section 387 is the appropriate procedural mechanism if the termination will result in foster care. (See In re Carlos E., supra, 129 Cal.App.4th at pp. 1418-1419, 29 Cal. Rptr.3d 317.)
We do not address the department's contention that the error in proceeding pursuant to section 388 instead of section 387 is harmless because we conclude there is another error that requires reversal. Even so, on remand, the matter needs to proceed according to the procedures provided by section 387.

II. Evaluation of available services
Appellants contend that the juvenile court erred when it failed to evaluate whether providing services to Gerald would have prevented termination of the guardianship. We agree that the failure to do so was an abuse of discretion and is reversible error.
Section 366.3, subdivision (b), provides that, "[notwithstanding Section 1601 of the Probate Code, the proceedings to terminate a legal guardianship that has been granted pursuant to Section 360 or 366.26 shall be held in the juvenile court, unless the termination is due to the emancipation or adoption of the child. Prior to the hearing on a petition to terminate legal guardianship pursuant to this paragraph, the court shall order the county department of social services or welfare department to prepare a report, for the court's consideration, that shall include an evaluation of whether the child could safely remain in the legal guardian's home, without terminating the legal guardianship, if services were provided to the child or legal guardian. If applicable, the report shall also identify recommended services to maintain the legal guardianship and set forth a plan for providing those services." (Italics added.) In addition, California Rules of Court, rule 5.740(c)(3)(A), (B) and (C) provides that when a petition to terminate a guardianship established as the permanent plan in a dependency matter is filed, the court may at the hearing on the petition (1) deny the petition; (2) deny the petition and request the county welfare department to provide services to the guardian and the ward for the purpose of maintaining the guardianship consistent with section 301;[2] or (3) grant the petition. (See In re Carlos E., supra, 129 Cal.App.4th at pp. 1418-1419, 29 Cal.Rptr.3d 317 [juvenile court may order informal supervision of legal guardian to improve conditions leading to termination request].)
There is no evidence that any evaluation of services was made available to Gerald no report was ordered, prepared, or considered. The petition and the report filed by the social worker took the position that the guardianship should be terminated. No mention was made whether the problems leading to the petition (Gerald's special *861 needs and his inability to protect the children from drug usage) could be addressed with services. This is true even though at the contested hearing Gerald expressed a willingness to accept services and to have the department supervise the guardianship. Unfortunately, trial counsel did not direct the court to section 366.3 or the applicable court rules. The court asked, "How would the Court provide for that?" Counsel responded, "I'm not sure unless he was voluntarilyI don't think there may be any statutory provision for it."
In order to determine the children's best interests, the court was obligated by statute to consider whether maintenance services to Gerald, as described in California Rules of Court, rule 5.740(c)(3)(B), and in section 301, could have been provided to save the guardianship. We also recognize that, where a guardianship has been created by the juvenile court in a dependency hearing, the legal guardian is not entitled to reunification services and no finding that adequate services were provided need be made prior to termination. (In re Carlos E., supra, 129 Cal.App.4th at p. 1419, 29 Cal.Rptr.3d 317.) Even so, the Legislature intended that the juvenile court at least consider whether services are available to ameliorate the need for modification of the permanent plan. (Ibid.) This is consistent with the overall intent of the dependency scheme, which is to protect children from abuse or neglect and to provide permanent, stable homes if those children cannot be returned home within a set period of time. (In re Celine R. (2003) 31 Cal.4th 45, 52, 1 Cal.Rptr.3d 432, 71 P.3d 787.) The statutory scheme identifies the legislative preferences for providing permanent and stable homesadoption, guardianship, and long-term foster care. Further, the statute establishes a presumption favoring guardianship over long-term foster care (§ 366.26, subd. (c)(4)) because guardianship is recognized as a more stable placement. (In re Naomi P. (2005) 132 Cal. App.4th 808, 822, 34 Cal.Rptr.3d 236.) In some dependency proceedings, the best available permanent alternative may be long-term foster care, but it is still presumed that guardianship is the better option. (§ 366.26, subd. (b)(4)(A); In re Ruth M. (1991) 229 Cal.App.3d 475, 482, 280 Cal.Rptr. 74.)
Unquestionably, the juvenile court is in the best position to decide the means most likely to lead to stability and permanency in these children's lives; however, it can do so only when it has sufficient information. The Legislature recognized that if the juvenile court's initial choice for a permanent plan of guardianship fails to serve a child's best interests, before moving to a less stable placement, the court should consider whether there is a way to preserve the guardianship. Doing so includes providing services to the legal guardian if necessary. Section 366.3 requires that this information be given to and considered by the juvenile court and, by implication, authorizes that identified services be provided if they are likely to prevent termination of the guardianship. (See also § 301 [authority for providing all available child welfare services].)
The court observed that Gerald was suffering severe limitations because of his medical problems, which substantially impaired his ability to provide regular care and adequate supervision for Jessica and Brett. While acknowledging the value of having teenagers assist with household chores, the court expressed concern that the children not have full responsibility for *862 daily living chores. The court also did not believe that Gerald was capable of keeping the children away from drugs, although the court believed that Gerald had been truthful in saying he was unaware of drug use in the home.
While we cannot predict what the juvenile court will ultimately do in this case, we believe that, had the required information been provided, there would have been a more meaningful discussion about what possibilities are available for these children. Further, the error is not harmless. The juvenile court acknowledged that Gerald and the children had a close bond. The children had lived in their grandparents' home for many years and expressed a desire to continue to live with their grandfather. We cannot ignore the obvious difficulty in finding a stable, long-term foster home for these two teenagers, especially when no relative placements are available. Based on the unique circumstances in this case, before the juvenile court takes the drastic step of terminating this guardianship, it must consider all available options to preserve it.
Since we have concluded there is error, we need not address the ineffective-assistance-of-counsel claim.

DISPOSITION
The order granting the petition and terminating the guardianship is reversed.
HARRIS, Acting P.J., and KANE, J., concur.
NOTES
[1] All further references are to the Welfare and Institutions Code.
[2] Section 301 provides for a "program of supervision" which "attempt[s] to ameliorate the situation which brings the child within ... the jurisdiction of Section 300 by providing or arranging to contract for all appropriate child welfare services...." (§ 301, subd. (a).)