[No. B209458. Second Dist., Div. Seven. Oct. 20, 2009.]

In re R.N., a Person Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY
SERVICES, Plaintiff and Respondent, v.
E.G., Defendant and Appellant.

**Counsel**

Joseph D. MacKenzie, under appointment by the Court of Appeal, for Defendant and Appellant.

Raymond G. Fortner, Jr., County Counsel, James M. Owens, Assistant County Counsel, and O. Raquel Ramirez, Deputy County Counsel, for Plaintiff and Respondent.

John L. Dodd & Associates and John L. Dodd for Minor.

**Opinion**

ZELON, J.—Minor R.N.'s grandparents were appointed her guardians in 1996. After the death of both grandparents, R.N.'s aunt D. filed a Welfare and Institutions Code section 388[1] petition seeking to be appointed her guardian. Father E.G. (Father) appeals the dependency court's order appointing D. as R.N.'s guardian, and a separate order summarily denying his subsequent section 388 petition challenging D.'s appointment. Father contends that under section 366.3, he was entitled to be considered as R.N.'s guardian and to be given reunification services, and that the dependency court erred in summarily denying his separate section 388 petition to terminate R.N.'s guardianship and give custody of R.N. to him. We reverse, because the failure to consider the provisions of section 366.3 deprived Father of his rights.

---

[1] All statutory references herein are to the Welfare and Institutions Code.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

1.  *Proceedings Held in 1994–1996*

R.N. was born in April 1994 with a positive toxicology screen for cocaine. The Los Angeles County Department of Children and Family Services (the Department) detained her and placed her with her paternal grandparents, R.G. and A.G. Mother (Mother) had a long history of using crack cocaine, and Father had a 20-year history of heroin, marijuana, crack and cocaine abuse. The disposition report stated that Father had been employed as a general laborer, but his last employment had been two years earlier. He was currently on general relief. The Department recommended drug rehabilitation services for both parents.

At the detention hearing April 21, 1994, neither parent was present. The court ordered R.N. to remain with her grandparents, and set a pretrial resolution conference for May 19, 1994. At that hearing, the dependency court sustained the petition, ordered family reunification services (drug treatment, random testing, parenting education, and monitored visitation) and set the matter for a six-month review hearing on November 17, 1994.

The Department's report prepared for the six-month hearing stated that Mother's whereabouts were unknown and that Father moved from motel to motel. Neither parent had complied with the reunification plan. Mother had told the social worker she had no intention of enrolling in drug treatment because she did not feel she had a drug problem. Father had not enrolled in a drug program, but had visited R.N. several times, although grandmother did not feel Father had bonded to R.N.

At the November 17, 1994 hearing, the court ordered additional reunification services and continued the matter for a 12-month review hearing on May 18, 1995.

The Department's report for the 12-month review hearing stated that Mother's whereabouts remained unknown, but that Father lived in Los Angeles. In April 1995, Father enrolled in a drug treatment program. R.N. was progressing normally, and had bonded with her grandmother. At the May 18, 1995 hearing, the court ordered additional reunification services and continued the matter for an 18-month review hearing on October 25, 1995.

The Department reported on October 19, 1995, that Father had been arrested for being under the influence of a controlled substance and was in jail. Further, the parents had not complied with their reunification plan. At the October 25, 1995 hearing, the court ordered Regional Center services for R.N. and set the matter for a permanency planning hearing on February 21, 1996.

The Department's report prepared for the permanency planning hearing stated that R.N.'s grandparents were bonded with her and wanted to be her legal guardians. R.N.'s parents had not enrolled in drug treatment or maintained contact with R.N. The case plan update filed for the hearing stated that R.N. had been referred to Regional Center services for speech therapy. Mother's whereabouts remained unknown, and Father continued to live the same lifestyle and use drugs. The Department recommended guardianship as R.N.'s permanent plan.

The grandparents' petition to be appointed R.N.'s guardians was granted April 24, 1996.

### 2. *Proceedings Held in 2008*

#### (a) *D.'s Section 388 Petition.*

On April 28, 2008, R.N.'s aunt D. filed a petition seeking to be appointed as R.N.'s guardian due to the death of R.N.'s grandparents.[2] The petition stated that grandfather had died in 2006, and grandmother on February 23, 2008. It reported Father had been living with the family since approximately 1997 because he had been "near death from drug use and living on the streets." Father had become disabled and unable to work as a result of his addiction. At some point, R.N.'s uncle A. also had come to live with the grandparents; A. is disabled with a probable diagnosis of paranoid schizophrenia. D., who is Father and A.'s sister, reported she was married, residing in Santa Cruz and had raised two daughters. D. asserted that it would be unhealthy and unsafe for R.N. to be raised by Father and A. The petition stated that grandmother had nominated D. as R.N.'s guardian, and that R.N. wanted to live with D.

---

[2] In the alternative, D. sought to have the matter transferred to Ventura County or to seek guardianship under the Probate Code.

Father opposed D.'s guardianship, and called the police to report a kidnapping while R.N. was at a meeting with an attorney in Ventura County about living with her aunt D. At a hearing held in Ventura County on April 18, 2008, the judge advised the parties that jurisdiction over the case remained in Los Angeles County.[3] The court permitted R.N. to live with D. during the pendency of the proceedings. On May 2, 2008, the dependency court in Los Angeles County reinstated its jurisdiction, and set the matter for a pretrial resolution conference on June 13, 2008.

Father opposed the section 388 petition, contending that he had rehabilitated his life, had not used drugs for 10 years, was no longer disabled and was working, had resided with R.N. at the grandparents' house for the last 10 years, and had been involved in R.N.'s upbringing. He contended that grandmother's nomination of D. as guardian was "misguided" because only a parent could nominate the guardian of a minor. Father sought termination of the dependency proceedings.

D. responded that Father had not been employed for the past several years and when she visited her mother during her illness, she found the house was dirty and that Father was abusing the family dog. D. did not believe Father had the ability to provide for R.N.'s needs.

The Department's report filed on D.'s section 388 petition stated that R.N. was currently living with D. in Santa Cruz. While R.N. was living with Father, the social worker investigated the home and found it "unkempt." There were clothes in the living room, dishes in the sink, and no food in the house. R.N. reported that grandmother wanted her to be placed with D. when grandmother died. R.N. stated that Father has outbursts, that Father and his brother A. did not speak to each other, and that he claimed that D. had stolen money from grandmother. Although the social worker found claims that Father was not meeting R.N.'s needs were unfounded, the Department believed it should assess D. as a prospective legal guardian for R.N.

When interviewed in June 2008, Father told the social worker his life had "completely changed," and that he did not understand why R.N. could not live with him. R.N., however, wanted to live with D., with whom she had visited every year since she was three years old.

The family assessment of D. indicated that she was married and taught elementary school, lived with her family in a four-bedroom home, and her

---

[3] Apparently, R.N. and her grandparents had been living in Ventura County.

two daughters were excelling in their educational endeavors. R.N. was in the eighth grade and was having some trouble at school. The Department noted that Father had never been R.N.'s primary caregiver, and that after grandmother died, R.N. was often left to fend for herself. Although Father claimed he was sober, during the preceding 12 years he had not filed a section 388 petition to regain custody of R.N. The Department believed it was in R.N.'s best interest to remain with D. due to her grief over the loss of her grandparents and Father's ongoing hostility with A. For this reason, it would be better for R.N. to be in a peaceful and nurturing home environment where she could receive needed emotional support. The Department recommended a section 366.26 hearing be calendared to appoint D. as R.N.'s guardian.

At the June 13, 2008 hearing, the dependency court noted that Father had not filed his own section 388 petition, and although his parental rights had not been terminated, R.N. was subject to the guardianship and therefore not under Father's control. The court asserted jurisdiction over the matter, and indicated that once it ruled on the section 388 petition, the case could be transferred to Ventura County. The court set the matter for a contested section 388 hearing on July 11, 2008, and ordered monitored visitation between Father and R.N.

On June 19, 2008, D. filed a de facto parent request, which the dependency court also set for hearing on July 11, 2008.

On July 11, 2008, the court denied D.'s de facto parent request because R.N. had not been placed with her for more than six months. With respect to D.'s section 388 petition, the court noted that because Father had not filed his own section 388 petition to obtain custody, the court could only rule on D.'s section 388 petition. The court granted D.'s petition, appointed her R.N.'s guardian, and terminated dependency court jurisdiction. The court observed that if Father wished to contest the court's rulings, he needed to file his own section 388 petition. The court issued letters of guardianship to D.

(b) *Father's Section 388 Petition.*

On September 26, 2008, Father filed a section 388 petition seeking custody of R.N. and termination of D.'s guardianship. Father alleged that the conditions leading to the dependency proceedings no longer existed because he had lived with R.N. for 10 years, developed a bond with her, and made many choices with respect to R.N.'s schooling and health. He claimed to have been substance free for over 10 years, and reported that he was a member of the

Church of Jesus Christ of Latter Day Saints where he was an elder. Father had earned 121 college units at Ventura College, and was a registered tax preparer, although he admitted he was on SSI. Father claimed to have taken care of grandmother while she was ill.

On October 17, 2008, the court summarily denied Father's section 388 petition on the grounds it did not establish it would be in R.N.'s best interests to change her placement.

## DISCUSSION

Father contends the dependency court erred in granting guardianship to D. and in denying his section 388 petition. In particular, Father contends that under section 366.3 he was entitled to reunification and to be considered for custody of R.N., and that a separate section 388 petition was not required for him to advance these arguments.[4]

■ At a selection and implementation hearing held pursuant to section 366.26, the dependency court must choose a permanent plan for the child. The court may terminate parental rights and order adoption; identify adoption as the permanent plan and order efforts be made to locate an adoptive family without terminating parental rights; order legal guardianship without terminating parental rights; or order long-term foster care without terminating parental rights. (§ 366.26, subd. (b); *In re Brandon C.* (1999) 71 Cal.App.4th 1530, 1534 [84 Cal.Rptr.2d 505].) Pursuant to section 366.26, a guardianship may be selected as the permanent plan where termination of parental rights and adoption are not in the child's best interests, or termination of parental rights would be detrimental to the child. (§ 366.26, subd. (c)(1).)

Pursuant to section 366.3, when the dependency court orders a permanent plan of legal guardianship, the court retains jurisdiction over the child until the guardianship is established. The court may thereafter continue jurisdiction over the child, or may terminate jurisdiction and retain jurisdiction over the minor as a ward of the guardianship established by section 366.26 and as authorized by section 366.4.[5] (§ 366.3, subd. (a); *In re Heraclio A.* (1996) 42

---

[4] We asked the parties to address at oral argument whether (1) a section 388 petition by the prospective new guardian was the proper procedural mechanism to bring this matter before the dependency court, and (2) Father was required to file an independent petition to contest the request for appointment of a new guardian.

[5] Section 366.4, subdivision (a) provides, "Any minor for whom a guardianship has been established resulting from the selection or implementation of a permanency plan pursuant to Section 366.26 is within the jurisdiction of the juvenile court. For those minors, Part 2 (commencing with Section 1500) of Division 4 of the Probate Code, relating to guardianship, shall not apply. If no specific provision of this code or the California Rules of Court is

Cal.App.4th 569, 574 [49 Cal.Rptr.2d 713]; see also Cal. Rules of Court, rule 5.740(a)(3).) "Thus, even though the juvenile court terminates dependency jurisdiction in a case, the juvenile court still retains jurisdiction over the guardianship . . . ." (*In re D.R.* (2007) 155 Cal.App.4th 480, 486–487 [66 Cal.Rptr.3d 151].)

■ Section 366.3 governs termination of guardianships.[6] "Section 366.3 recognizes that there may be a need to terminate a guardianship established as the permanent plan for a dependent child. To this end, it sets forth a procedure for notice, evaluation of the problems and possible solutions, and a mechanism by which reunification services to the parent(s) might be reinitiated if the guardianship is terminated." (*In re Jessica C.* (2007) 151 Cal.App.4th 474, 481 [59 Cal.Rptr.3d 855].) Section 366.3, subdivision (f) provides that parents whose rights have not been terminated may participate in a guardianship termination hearing, and may be considered as custodians for the child, and the child returned to them if they establish, by a preponderance of the evidence, that reunification is in the child's best interests. If such a finding is made, reunification services may be provided to the parent for up to six months. (§ 366.3, subd. (f).)

---

applicable, the provisions applicable to the administration of estates under Part 4 (commencing with Section 2100) of Division 4 of the Probate Code govern so far as they are applicable to like situations."

[6] Section 366.3, subdivision (b) provides in relevant part: "Prior to the hearing on a petition to terminate legal guardianship pursuant to this subdivision, the court shall order the county department of social services or welfare department having jurisdiction or jointly with the county department where the guardian and child currently reside to prepare a report, for the court's consideration, that shall include an evaluation of whether the child could safely remain in, or be returned to, the legal guardian's home, without terminating the legal guardianship, if services were provided to the child or legal guardian. If applicable, the report shall also identify recommended family maintenance or reunification services to maintain the legal guardianship and set forth a plan for providing those services. If the petition to terminate legal guardianship is granted, either juvenile court may resume dependency jurisdiction over the child, and may order the county department of social services or welfare department to develop a new permanent plan, which shall be presented to the court within 60 days of the termination. If no dependency jurisdiction has attached, the social worker shall make any investigation he or she deems necessary to determine whether the child may be within the jurisdiction of the juvenile court, as provided in Section 328.

"Unless the parental rights of the child's parent or parents have been terminated, they shall be notified that the legal guardianship has been revoked or terminated and shall be entitled to participate in the new permanency planning hearing. The court shall try to place the child in another permanent placement. At the hearing, the parents may be considered as custodians but the child shall not be returned to the parent or parents unless they prove, by a preponderance of the evidence, that reunification is the best alternative for the child. The court may, if it is in the best interests of the child, order that reunification services again be provided to the parent or parents."

■ Section 366.3 does not specify whether the death of the guardian terminates the guardianship, nor does it specify the procedures to be followed in the event the guardian can no longer serve. In the absence of such guidance, courts have held sections 387 and 388 are appropriate vehicles where a new guardian must be appointed or the guardianship terminated. (*In re Jessica C., supra*, 151 Cal.App.4th at p. 481; see also *In re Carrie W.* (2003) 110 Cal.App.4th 746, 757 [2 Cal.Rptr.3d 38] [§ 388 may be used to bring guardianship termination petition].) *Jessica C.*, relying on the language of California Rules of Court, rule 5.740(c) reasoned, "The language of California Rules of Court, rule 5.740(c), recognizes that a petition seeking to terminate a guardianship may be brought as either a petition to modify or a petition to supplement the previous order, depending on the circumstances. [Rule 5.740(c)] provides that '[a] petition to terminate a guardianship established by the juvenile court, to appoint a successor guardian, or to *modify* [§ 388] or *supplement* [§ 387] orders concerning the guardianship must be filed in juvenile court.' " (*Jessica C.*, at p. 481.)

■ Thus, the court did not err in permitting a section 388 petition to be the vehicle for its determination concerning R.N.'s guardianship.[7] However, the court did err in failing to offer Father the consideration required by section 366.3, subdivision (f). Section 366.3 is implicated not only by petitions to terminate a guardianship, but by petitions to modify a prior guardianship order by, among other things, appointment of a successor guardian. Section 366.3's express provisions embody the Legislature's policy determination that, when a change in a guardianship is made, the dependency court must provide notice to parents, consider and evaluate possible custody solutions, and consider whether to provide reunification services. (See also Cal. Rules of Court, rule 5.740(c) [no distinction between petitions to terminate or to modify a guardianship].)

Therefore, Father was entitled to participate, to be considered as R.N.'s guardian, and to be eligible to receive reunification services without the requirement that he file his own section 388 petition.[8] The dependency court erred in denying Father these rights.

---

[7] As the Department conceded at oral argument, its request for a new section 366.26 hearing would also have been appropriate in these circumstances.

[8] Because we conclude that the court erred in refusing to consider Father's rights in the context of D.'s section 388 petition to appoint a new guardian, we need not address Father's own section 388 petition.

## DISPOSITION

The orders of the superior court are reversed. The case is remanded for further proceedings consistent with section 366.3 and this opinion.

Woods, Acting P. J., and Jackson, J., concurred.