Filed 8/19/14  In re D.D. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| In re D.D., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E060336 |
| Plaintiff and Respondent, | (Super.Ct.No. J237196) |
| v. | OPINION |
| C.T. et al., | |
| Defendants and Respondents; | |
| D.D., | |
| Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Christopher B. Marshall, Judge.  Affirmed.

Lisa A. Raneri, under appointment by the Court of Appeal, for Appellant.

1

Jean-Rene Basle, County Counsel, and Jeffrey L. Bryson, Deputy County Counsel, for Plaintiff and Respondent.

Lauren Johnson, under appointment by the Court of Appeal, for Defendant and Respondent C.T.

Nicole Williams, under appointment by the Court of Appeal, for Defendant and Respondent J.D.

The juvenile court removed D.D. (minor; DOB November 1995) from the legal custody of her parents on March 15, 2011. On July 13, 2012, the juvenile court ordered minor placed in legal guardianship with her paternal grandmother (PGM). On December 27, 2012, at the request of the social worker, the juvenile court discharged minor as a dependent of the court.[1]

On September 19, 2013, minor filed a Welfare and Institutions Code section 388 petition seeking reinstatement of the dependency and termination of the guardianship.[2] The court denied the petition. On appeal, minor contends the court erred in denying her petition or, in the alternative, in not ordering informal supervision of the guardian. We affirm the judgment.

---

[1] The juvenile court duplicatively dismissed the petition, terminated jurisdiction, and relieved all counsel again on January 11, 2013.

[2] All further statutory references are to the Welfare and Institutions Code.

FACTUAL AND PROCEDURAL HISTORY

On January 27, 2011, a social worker responded to the home in which minor and her three siblings had been living for several months. The oldest sibling was 18 years of age. Minor was 15 years of age at the time. The home had no heat, electricity, hot water, or food. The home was filled with trash. Mother lived elsewhere with her boyfriend, but would drop by every few days to bring food. The eldest daughter had been placed in charge of her younger siblings when she was 17 years old. The minors were infected with lice.

The juvenile court denied reunification services to father who was in prison. The juvenile court eventually terminated mother's reunification services.[3] The court placed minor and one of her siblings in a legal guardianship with their grandmother.

On December 14, 2012, the social worker requested dismissal of the dependency as the social worker had observed minor in the placement for six months, found minor to be happy, had ensured a Kinship Guardian Assistance Program (Kin-Gap) was in place, and no longer believed social services' involvement was necessary.

At a hearing on the request, the following colloquy occurred:

Minor's Counsel: "We did see the children. They are doing fine in the home. My only concern was with [minor]. She's going to be 18 this year. [¶] And there's just a

---

[3] Neither of the parents are parties to the appeal.

3

history of the girls not getting along with the grandmother well. And if placement does not survive her 18th birthday, she won't be eligible for the AB12 because she's in guardianship."[4]

Court: "I'm confused."

Counsel: "Well, if she's in guardianship, I think, if she leaves the home when she's 18, the guardianship goes away on its own, and there's no payee, I guess. And it won't roll over to AB12 because she does not have a caretaker."

Ms. Anderson: "Guardianship will terminate by law on her 18th birthday."[5]

Court: "That's a true statement."

Father's Counsel: "But she's already in a guardianship."

Court: "Exactly."

Father's Counsel: "You can't terminate the guardianship."

Court: "Correct. That's a point that she needs to be aware of, but it's not something the Court can do anything about. [¶] All right. I will sign the packet. [¶] Parents' counsel are relieved."

---

[4] AB12 is the short term used to refer to the California Fostering Connections to Success Act (CFCSA) "which allows certain youth in foster care to continue receiving assistance payments after turning 18 . . . ." (*In re A.F.* (2013) 219 Cal.App.4th 51, 55.)

[5] It is unclear from the record precisely who "Ms. Anderson" is because no one by that name made an appearance at any of the hearings below and the name does not appear on any of the social worker reports.

On September 19, 2013, minor filed a section 388 petition seeking reinstatement of the dependency and termination of the guardianship. Minor contended she had experienced emotionally stressful conflicts with PGM, that the Kin-Gap funds were not being used for her care, and that the gas had been shut off in the apartment for a week. In the October 25, 2013, interim review report, the social worker reported she had interviewed minor on October 16, 2013. The home appeared clean, well maintained, and had an adequate supply of food. Minor reported PGM had bought the food a few days earlier knowing the social worker would be coming. Minor informed the social worker she had only one pair of pants and no winter clothing. The social worker observed minor had four to five dresses. Minor informed the social worker minor believed PGM used the Kin-Gap funds to pay for PGM's daughter's apartment.

Minor wanted to go live with one of her aunts; however, Children and Family Services (CFS) could not place her there as the aunt's children had been previously removed from the aunt's care. The social worker asked if minor wanted to live in foster care; minor cried and said she did not want to, but felt she could not remain with PGM. Minor asked about living with her boyfriend's family. The social worker informed minor she could not live with her boyfriend's family if she wanted to receive extended foster

care (EFC).[6] The social worker discussed at length with minor an EFC program which could include Transitional Housing Program-Plus apartments.

The social worker interviewed PGM who reported minor had plenty to eat, but did not like PGM's traditional Mexican cooking. PGM admitted food would get low at the end of the month. PGM said it was the first time she heard minor wanted pants; she said when they go shopping, minor always wanted dresses and short shorts. PGM said she was sad to hear minor wanted to leave her home: "'It's so sad for me. I try to do everything for her but it's never enough.'" PGM said minor only filed the petition because she wanted to live with her boyfriend: "'When I said no and that I would not sign the papers allowing her to live with them, she called her attorney. I don't think it is in her best interest to live with them. I want her to go to school and make something of herself. I don't want her to just be with him.'"

Although the social worker believed PGM genuinely loved minor, the social worker did not believe minor's needs were being adequately addressed. Thus, the social worker opined minor's long-term interests would be more adequately addressed if minor were to participate in EFC. The social worker recommended the court resume jurisdiction over minor and set aside the guardianship.

---

[6] EFC is a general term for a number of programs which provide assistance to non-minor dependents who age out of the juvenile dependency process. http://www.childsworld.ca.gov/PG2916.htm [as of August 18, 2014].

6

At the hearing on minor's petition on November 15, 2013, minor's counsel noted minor was still living with PGM, but wanted to go live with her boyfriend. Minor's counsel was afraid that if minor left PGM's home once minor turned 18, in a couple weeks, the guardianship would be terminated and minor would be unable to preserve EFC benefits if things with her boyfriend's family did not work out. Minor's counsel requested termination of the guardianship and the establishment of a Planned Permanent Living Arrangement (PPLA).

CFS noted that since minor was now going to stay with PGM, it would be inappropriate to terminate the guardianship just to preserve the possibility of AB12 benefits, "otherwise we would be doing that in every guardianship . . . ." CFS observed that although there were some issues in the home, none presented a risk to minor which is why they did not remove her. Rather, it appeared to be a deterioration in the relationship between PGM and minor "which oftentimes happens when you have a teenager."

The juvenile court found PGM's home safe, clean, and well maintained. The court believed there was sufficient food. The court noted the situation appeared to be just tension as to rules PGM made with which minor was not in agreement. The court denied minor's request to terminate the guardianship.

DISCUSSION

A.     Termination of the Guardianship.

Minor contends the court abused its discretion by denying her request to terminate the guardianship. We disagree.

7

Termination of a guardianship is within "'the sound discretion of the juvenile court, and the trial court's ruling should not be disturbed on appeal unless an abuse of discretion is clearly established. . . . As one court has stated, when a court has made a custody determination in a dependency proceeding, "'a reviewing court will not disturb that decision unless the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination.'"' [Citation.]" (*In re Michael D.* (1996) 51 Cal.App.4th 1074, 1087.)

Here, ample evidence established it was in minor's best interest to remain in a guardianship with PGM. Minor had been living with PGM at least since the juvenile court established the guardianship on July 13, 2012, 16 months prior to the hearing. The social worker reported in December 2012, that minor appeared happy and told the social worker herself she was happy in the placement. The social worker had determined that CFS involvement was no longer necessary. Moreover, minor had agreed to continue living with PGM for a least the two more weeks until she turned 18, rather than accept even such a short-termed placement in foster care.

Although there was some concern regarding minor's food and clothing, CFS noted that none of the issues presented a risk to minor. Rather, it appeared the real issue between minor and PGM was personal, typical of the relationship between a parental figure and a teenager. In addition to finding just such a relationship, the juvenile court made factual findings that PGM's home was safe, clean, well maintained, and stocked with sufficient food. The court acted within its discretion in denying minor's petition.

8

B.    Informal Supervision of PGM.

Minor contends that even if the court acted within its discretion in denying her petition, it erred in failing to order informal supervision of PGM.  We disagree.

"[T]he juvenile court may order informal supervision of the legal guardian in order to assist in 'ameliorating' the conditions that led to the request to terminate the legal guardianship." (*In re Carlos E.* (2005) 129 Cal.App.4th 1408, 1419 [fn. omitted]; accord *In re Jessica C.* (2007) 151 Cal.App.4th 474, 483; § 366.3, subd. (b); Cal. Rules of Court, rule 5.740(c)(3)(B).)  Nonetheless, a party forfeits an issue she fails to raise below. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293.)

We hold that by failing to raise the issue below, minor forfeited the contention informal supervision of the legal guardian should have been ordered.  Regardless, it is clear on this record the juvenile court would have denied any such request and substantial evidence would have supported that decision.  Here, the juvenile court expressly found that PGM's home was safe, clean, well maintained, and stocked with sufficient food.  The court found any problems between minor and PGM were the result of minor's disagreement with rules handed down by PGM. Minor's complaints regarding PGM were insubstantial enough that she refused CFS's offer to place her in short-term foster care. Minor planned to continue to live with PGM at least until she turned 18. No informal supervision of PGM was necessary, particularly if minor intended to leave PGM's home in two weeks.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON       
J.

We concur:


RAMIREZ           
         P. J.


KING               
         J.