Filed 9/27/16  In re Kerrie S. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re KERRIE S., a Person Coming Under the Juvenile Court Law. | B270524 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ANNE S.,<br><br>Defendant and Appellant. | (Los Angeles County Super. Ct. No. CK02172) |

APPEAL from an order of the Superior Court of Los Angeles County, Rudolph Diaz, Judge.  Affirmed.

Lisa A. Raneri, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, R. Keith Davis, Acting Assistant County Counsel, and Tracey F. Dodds, Principal Deputy County Counsel, for Plaintiff and Respondent.

─────────────

**INTRODUCTION**

After Kerrie (age 17) was removed from the custody of her guardians, the juvenile court terminated the guardianship. Kerrie's mother, Anne M., who lost custody of Kerrie when the child was five years old, appeals from the order of the juvenile court denying her petition for modification (Welf. & Inst. Code, § 388)[1] seeking resumption of reunification services. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *The dependency*

This very long and involved saga dates back to 2004 when Kerrie and her older brother Luis were removed from the custody of Anne, who was living at a shelter, but had been asked to leave following a rowdy altercation with another resident.[2] The cardinal reason for the dependency was the state of Anne's mental health and her "long-standing history of making false allegations and accusations to the detriment of her children. Many of the same behaviors were recited in the Evidence Code section 730 evaluation of Anne . . . conducted in . . . 1993." (*In re Kerrie S*. (July 10, 2006, B189816) [nonpub. opn.], at [p. 3].) Anne refused therapy, deciding she preferred living in her car. (*Ibid.*)

Anne did not reunify and so in 2007, the juvenile court placed the children in a guardianship with the paternal grandmother. In 2011, after the paternal grandmother passed away, the paternal aunt and uncle, Luz and Hector S., became the children's guardians. The juvenile court terminated its jurisdiction in the fall of 2011 and awarded Anne twice monthly visits with the children, to be supervised by a professional monitor.

Anne filed a series of petitions for modification (§ 388) containing allegations of abuse of the children and seeking return of the children to her custody or additional

---

[1]    All further statutory references are to the Welfare and Institutions Code.

[2]    For a concise summary of this case, see *In re Kerrie S*. (Nov. 29, 2012) case No. B237289.

visitation.  In mid-2014, the juvenile court denied another of Anne's section 388 petitions alleging abuse of Kerrie by her guardians, and revoked Anne's visitation.

Anne frequently called the Department of Children and Family Services (the Department) between 2012-2013 to launch accusations against the guardians, each time triggering Departmental investigations.  In each case, the Department determined the allegations were unfounded.  In March 2014, a caller to the Department's offices reported that Anne, who was in a shelter, complained again about the guardians.  The caller stated that Anne "is being referred for counseling by the shelter.  [Anne] may be moved to a shelter [in a] different location due to safety concerns."

2. *The events leading to the termination of the guardianship*

Late in 2015, the Department learned that Kerrie had been lying, stealing, sneaking out of her bedroom window, and running away from home so that she would not have to remain in her guardians' care.  At school, the principal was confiscating unexplained cell phones from Kerrie who was failing all of her classes.  The last straw was when Kerrie had a friend scratch her so she could accuse the guardians of physical abuse.  Unable to control Kerrie's behavior, the guardians asked to have her removed from their care.  Kerrie did not want to return to the guardians' custody.  They were too strict for Kerrie because they made her do chores and expected good grades.  Kerrie also informed the social worker that she could not return to Anne because Anne has mental problems and was doing drugs.  Luis, who is not a party to this proceeding, is happy, comfortable, and safe living with the guardians, where he wants to remain.

The Department placed Kerrie in a group home and filed a supplemental petition (§ 387) alleging that the previous disposition had not been effective in protecting Kerrie as her guardians were unwilling and unable to provide Kerrie care and supervision because of her behavior.  The social worker could not obtain a statement from Anne as her whereabouts were unknown and she was unreachable by telephone, even to leave a message.

At the detention hearing in December 2015, the juvenile court detained Kerrie and appointed counsel for Anne.  At the court's request, the guardians filed a petition for

3

modification under section 388 seeking the termination of Kerrie's guardianship. The court set a hearing on the guardians' petition for February 3, 2016.

In advance of the hearing, the Department relayed Anne's statement that " 'I am not surprised that she [Kerrie] doesn't want to live with them [the guardians.] She is terrified of them. She didn't want to be there two years ago. Hector has always had a temper. What can I do to get her back? I love my children.' " The Department recommended that Kerrie participate in independent living services, Anne receive monitored visits, and the court schedule a permanency planning hearing.

3. *Anne's section 388 petition*

On February 3, 2016, Anne filed a section 388 petition seeking to (1) terminate the guardianship, (2) receive reunification services, emergency housing assistance, bus passes, and conjoint therapy, (3) obtain full physical and legal custody of Kerrie, or receive unmonitored visitation, and (4) be added to the present case. As changed circumstances, Anne listed Kerrie's detention from her guardians and the Department's section 387 petition. The modification of court orders sought by Anne was in Kerrie's best interest because, Anne asserted, Kerrie was unsafe in the guardians' home. "I love my daughter, and I am peaceful, positive and have always been in compliance. I will assist in any way I can to help my daughter." Anne attached a declaration in which she stated that she shares many fond memories of Kerrie's childhood and that she stood by Kerrie "100%. Her well-being and happiness is my priority. I feel the best environment for my daughter and my son is with me."

The juvenile court summarily denied Anne's petition without a hearing, stating that the request did not state new evidence or a change of circumstances and the proposed change of order did not promote the best interest of the child.

At the February 3, 2016 hearing on the guardians' petition for modification, held the same day as Anne filed her section 388 petition, the juvenile court dismissed the Department's supplemental petition (§ 387). The court granted the guardians' modification petition and terminated the guardianship but retained jurisdiction. The court ordered that Kerrie be placed in a planned permanent living arrangement as the

4

permanent plan, and set a review hearing for August 2016. The court found a compelling reason for determining that a hearing under section 366.26 was not in the child's best interest because she was not the proper subject for adoption and had no one willing to accept legal guardianship.

Turning to Anne's petition for modification (§ 388), the court reiterated that it was "very deficient . . . . She [Anne] does not indicate that she had complied with the case plan whatsoever." The court explained that Anne had been found to be an unfit parent and her section 388 petition did not indicate that Anne had since become capable of parenting Kerrie. Rather, Anne simply said she loves her daughter. *The court twice invited Anne to file a new section 388 petition*, with the aid of her court appointed counsel, which the court would entertain. At Kerrie's request, the court awarded Anne monitored visitation. Anne's appeal ensued.

## CONTENTIONS

Anne contends that the juvenile court erred as a matter of law in denying her a hearing into whether offering her additional reunification services was in Kerrie's best interest.

## DISCUSSION

1. *Anne has demonstrated no juvenile court error in summarily denying her section 388 petition*.

Section 388 establishes the procedure by which a party may petition the court to change, modify or set aside a previous court order. Anne, as petitioning party, had "the burden of showing, by a preponderance of the evidence, that (1) there is a change of circumstances or new evidence, and (2) the proposed change is in the child's best interests. [Citations.]" (*In re Jackson W.* (2010) 184 Cal.App.4th 247, 257.) Anne needed only to " 'make a prima facie showing to trigger the right to proceed by way of a full hearing.' [Citation.] ' "[I]f the petition presents any evidence that a hearing would promote the best interests of the child, the court will order the hearing." [Citation.]' [Citation.]" (*Ibid.*) However, "[i]f the liberally construed allegations of the petition do not show changed circumstances such that the child's best interests will be promoted by

5

the proposed change of order, the dependency court need not order a hearing." (*In re Anthony W.* (2001) 87 Cal.App.4th 246, 250.) "In determining whether the petition makes the necessary showing, the court may consider the entire factual and procedural history of the case. [Citation.]" (*In re Jackson W.*, *supra*, at p. 258.)

Anne's section 388 petition manifestly did not address, let alone make a prima facie showing of, a change in circumstances such that awarding her reunification services would be in Kerrie's best interests. (*In re Anthony W.*, *supra*, 87 Cal.App.4th at p. 250.) The only change in circumstance Anne cited, both in her petition and at the hearing, was the termination of Kerrie's guardianship and placement in foster care.

However, as we explained in *In re Angel B.* (2002) 97 Cal.App.4th 454, "[a]lthough the specific factors a court must consider vary with each case, each child's best interests would *necessarily involve eliminating the specific factors that required placement* outside the parent's home." (*Id.* at pp. 463-464, italics added, citing *In re Heather P.* (1989) 209 Cal.App.3d 886, 892.) Anne's section 388 petition failed to mention *any* of the specific factors that caused Kerrie's removal from her in 2004. Anne did not indicate that she has undergone or completed therapy or at a minimum, that she is no longer homeless. Anne's section 388 petition made no showing, even prima facie, of a change in *Anne's circumstances* such that it would be in Kerrie's best interest to reinitiate reunification services. Accordingly, the juvenile court did not abuse its discretion in summarily denying her section 388 petition.

2. *Anne has demonstrated no reversible error at the February 3, 2016 hearing*.

Anne contends that subdivisions (b)(3) and (f) of section 366.3 nonetheless entitle her to a hearing on her request to reinstitute reunification services.

Section 366.3 governs the termination of guardianships. (*In re R.N.* (2009) 178 Cal.App.4th 557, 565.) The statute delineates the procedure for notice and evaluation of the case, and a " 'mechanism by which reunification services to the parent(s) might be reinitiated if the guardianship is terminated.' [Citation.] Section 366.3, subdivision (f) provides that parents whose rights have not been terminated may participate in a guardianship termination hearing, and may be considered as custodians

for the child, and the child returned to them if they establish, by a preponderance of the evidence, that reunification is in the child's best interests. If such a finding is made, reunification services may be provided to the parent for up to six months. (§ 366.3, subd. (f).)" (*Id.* at p. 565.)[3]

Here, the juvenile court was obligated to follow the procedure set forth in section 366.3 (*In re R.N.*, *supra*, 178 Cal.App.4th at p. 566), regardless of the vehicle for triggering juvenile court jurisdiction to terminate the guardianship. (*In re Jessica C.* (2007) 151 Cal.App.4th 474, 481 [the court may terminate a guardianship under either §§ 388 or 387].) Under section 366.3, Anne was entitled to notice and an opportunity to participate in the permanency planning hearing to consider whether to provide her reunification services. (*In re R.N.*, *supra*, at p. 566; § 366.3, subs. (b) & (f).) The court erred in failing to follow that procedure.

Nonetheless, we conclude that the error here was harmless. (*In re S.H.* (2011) 197 Cal.App.4th 1542, 1556 [§ 366.3 error harmless beyond reasonable doubt], citing

---

[3]     As is pertinent here, subdivision (b)(1) and (3) of section 366.3 reads: "If the court has dismissed dependency jurisdiction following the establishment of a legal guardianship . . . and the legal guardianship is subsequently revoked or otherwise terminated, the county department of social services or welfare department shall notify the juvenile court of this fact. The court may vacate its previous order dismissing dependency jurisdiction over the child. [¶] . . . [¶] Unless the parental rights of the child's parent or parents have been terminated, they shall be notified that the legal guardianship has been revoked or terminated and *shall be entitled to participate in the new permanency planning hearing*. The court shall try to place the child in another permanent placement. *At the hearing, the parents may be considered as custodians but the child shall not be returned to the parent or parents unless they prove, by a preponderance of the evidence, that reunification is the best alternative for the child.* The court *may*, if it is in the best interests of the child, order that reunification services again be provided to the parent or parents." (Italics added.)

Subdivision (f) of section 366.3 entitles parents whose parental rights have not been terminated, to receive notice of, and participate in review hearings, pursuant to subdivision (e). Continuing, subdivision (f) provides, "It shall be presumed that continued care is in the best interests of the child, *unless the parent or parents prove, by a preponderance of the evidence, that further efforts at reunification are the best alternative for the child.*" (Italics added.)

7

*M.T. v. Superior Court* (2009) 178 Cal.App.4th 1170, 1182.) As the Department observed, Anne was not denied the opportunity to participate in the February 3, 2016 hearing. She was notified of the proceeding, appeared, had counsel appointed for her, and argued that her request for reunification, contained in her section 388 petition, be considered. Anne, who had the burden to show by a preponderance of the evidence that reinitiating "reunification is the best alternative for the child" (§ 366.3, subds. (b)(3) & (f)), did not even make a prima facie showing required by section 388 that the re-initiation of reunification services -- the modification she sought -- would be in Kerrie's best interest. At the hearing, Anne did not make an offer of proof either that reunification would be in Kerrie's best interest or that Kerrie wanted to reunify with her. Nor did Anne object to the court's ruling or request a continuance to present evidence.

Anne argues the denial of her request for a hearing was not harmless because "[i]t is reasonably probable sixteen-year-old Kerrie may remain in foster care until she reaches the age of majority" in September 2017, with the result that "providing Kerrie a post-permanency opportunity to attempt to reunify with her mother . . . is the best and most appropriate alternative." Even if reunification might be an appropriate alternative if Anne's situation had changed, circumstances have not changed. Anne continues to make unsubstantiated accusations about people in her children's lives, as evidenced by her numerous section 388 petitions and calls to the Department reflected in this record. There is no evidence that she has completed the required therapy. To the contrary, the record indicates she is homeless and the shelter where she was living had referred her for counseling and was considering moving her elsewhere because of "safety concerns." Furthermore, Kerrie did not state she wanted reunification services with Anne, her counsel's suggestion at the hearing to the contrary notwithstanding; Kerrie stated she could *not* live with Anne because Anne "has mental problems and [was] doing drugs." Finally, the juvenile court *twice* invited Anne to file a new section 388 that complied with the requirements for triggering a hearing. On this record, although Anne was entitled to notice and an opportunity to participate in the hearing (§ 366.3, subds. (b) & (f)), she received notice, had an opportunity to participate, and failed to carry her burden to show

8

even prima facie entitlement to reunification services under section 388, with the result she did not show, "by a preponderance of the evidence, that reunification is the best alternative for the child" under section 366.3, subdivision (b)(3).  Anne would not have obtained a more favorable result had the court permitted her to participate in a permanency planning hearing.  (*In re S.H.*, *supra*, 197 Cal.App.4th at p. 1556.)

### DISPOSITION

The order is affirmed.


### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS



ALDRICH, J.



We concur:



EDMON, P. J.



STRATTON, J.*

_____

*        Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.