Filed 2/4/15  Certified for publication 3/4/15 (order attached)

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FIFTH APPELLATE DISTRICT**

| | |
|---|---|
| In re Priscilla D. et al., Persons Coming Under the Juvenile Court Law. | |
| FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>       Plaintiff and Respondent,<br><br>              v.<br><br>CINDY C.,<br><br>       Defendant and Appellant. | F069317<br><br>(Super. Ct. Nos. 79112-6, 79112-7 & 79112-8)<br><br>**OPINION** |

**THE COURT**[*]

APPEAL from orders of the Superior Court of Fresno County. Timothy A. Kams, Judge.

Lauren K. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel C. Cederborg, County Counsel, and Amy K. Cobb, Deputy County Counsel, for Plaintiff and Respondent.

---

[*]        Before Gomes, Acting P.J., Detjen, J., and Franson, J.

The juvenile court ordered Cindy C.'s children, Priscilla, Isaiah and David, into a permanent plan of legal guardianship without dependency. Cindy petitioned the juvenile court to modify its order under Welfare and Institutions Code, section 388[1] and to order family maintenance services for her. Following an evidentiary hearing, the juvenile court ruled that section 388 does not authorize the termination of a guardianship and denied Cindy's petition on legal grounds. Cindy contends the juvenile court's ruling was error. We reverse.

**PROCEDURAL AND FACTUAL SUMMARY**

The sole issue in this case is whether a legal guardianship can be terminated by a parent under section 388. We conclude that it can.

Dependency proceedings were initiated in June 2010 when the Fresno County Department of Social Services (department) took then 14-year-old Priscilla, 9-year-old Isaiah and 2-year-old David into protective custody after Cindy was arrested for being under the influence of phencyclidine (PCP) and for child endangerment. At that time, she had been using PCP for 30 years.

The juvenile court denied Cindy reunification services and the department placed Priscilla, Isaiah and David in the home of their maternal uncle, Frank, and his wife, Denise. The juvenile court found it would be detrimental to the children to terminate Cindy's parental rights, ordered them into legal guardianship and issued letters of guardianship to Frank and Denise. The court established a kinship guardianship with Frank and Denise under the Kinship Guardianship Assistance Payments (Kin-GAP) program[2] and terminated its dependency jurisdiction over the children.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] The Kin-GAP program is a state program that provides ongoing funding for children who exit the dependency system to live with relative legal guardians. In order to receive funding under the program the county welfare agency must enter into a written

2

In August 2013, Cindy filed a section 388 petition asking the juvenile court to change its orders selecting Kin-GAP guardianship as the children's permanent plan. She informed the court that she completed substance abuse treatment and parenting classes, maintained her sobriety for three years and attended Alcoholics/Narcotics Anonymous meetings. She had liberal visitation with the children which included every weekend from Friday through Sunday and all school breaks, including summer vacation. She believed she had established a permanent and safe home for the children and they wanted to return to her care and be reunited as a family.

Social worker Maria Garza visited Cindy at her home and interviewed Priscilla, Isaiah and David who were then 17, 12 and 5 years old respectively. Cindy and Priscilla each occupied a bedroom in Cindy's three-bedroom home and David and Isaiah shared the third. Garza found the home clean and well supplied with food and other necessities. The children all expressed their desire to live with Cindy. While there, Garza contacted Frank by telephone and he agreed that the children should return to Cindy. As a result of Garza's visit, the department recommended the juvenile court reinstate its dependency jurisdiction, set the guardianship aside and return the children to Cindy's custody.

On September 10, 2013, the juvenile court convened a hearing on Cindy's section 388 petition. County counsel informed the court that Frank and Denise declined to terminate the guardianship. The court reinstated its dependency jurisdiction, appointed counsel for Cindy and the children and continued the matter so the department could clarify Frank and Denise's wishes.

Frank told Garza he did not want to set aside the guardianship because he did not want Cindy going "back to her old ways" but he would leave it up to the court. The

binding agreement with the relative guardian and dependency jurisdiction must be terminated. (§§ 11386 & 11387.)

3

department filed an addendum report and recommended the children remain in Frank and Denise's custody.

In October 2013 and over the course of the ensuing six months, the juvenile court and counsel conferred in open court as to whether the court could terminate the guardianship under section 388, the general statute allowing the court to change, modify or set aside a prior order. Cindy's attorney and minors' counsel argued that it could. County counsel advised the court that it could not and directed the court instead to section 366.3, subdivision (b) which guides the court proceedings when a guardianship has been terminated or revoked. After some discussion, it was agreed that section 366.3 required the department to assess Frank and Denise to determine if it was safe for the children to remain in their custody and whether it was in their best interest to do so. The court asked the department to prepare such a report. The court also asked counsel to submit written arguments addressing whether a guardianship could be terminated under the authority of section 388.

Meanwhile, in November 2013, Cindy filed another section 388 petition asking the juvenile court to change its orders placing the children in legal guardianship. The rationale for the change was the same as the section 388 she filed in August 2013 except she asked for family maintenance services instead of the children's return to her home. At a hearing in December 2013, Cindy's attorney asked to withdraw the petition filed in August and the court granted the request.

In April 2014, the juvenile court convened a contested hearing on Cindy's petition filed in November 2013. By that time, the court had counsel's written arguments and the department's report recommending the juvenile court deny Cindy's section 388 petition and continue legal guardianship as the permanent plan. Since the children had appeared to testify, the court deferred ruling on the applicability of section 388 and proceeded to hear the evidence.

4

Priscilla, Isaiah and David testified that if given the choice they preferred to live with Cindy. Priscilla testified that she, her two brothers and several cousins lived with Frank and Denise in their three-bedroom home. She shared a small bedroom with Isaiah, David and her 18- and 8-year-old male cousins. On cross-examination, Priscilla admitted that she had been skipping school since December 2013 and that Frank and Denise had only found out several weeks before the hearing. On two of those occasions she visited Cindy who told her to go to school but she refused. She said she would turn 18 in the summer. She planned to graduate from high school and enroll in college whether she was living with Cindy or Frank and Denise. Priscilla also testified that she had a good relationship with Frank and Denise and that they took good care of her.

Priscilla further testified that Denise and Denise's 24-year-old son, Anthony, drank alcohol and that Anthony did not know when to stop. She said Anthony who was called "Pops" was gang-affiliated and members of his gang sometimes came to the house.

Isaiah testified that he had not seen anyone in the house drunk but that they drank at parties. He said he felt unfairly treated by Frank and Denise sometimes but felt loved by them.

Social worker Rhonda Armstrong testified that the department changed its recommendation with respect to terminating the guardianship because Frank and Denise did not want to terminate the guardianship and because the department's goal was to preserve the guardianship. She said she saw no indication that Cindy was using drugs and that her home appeared to be safe for the children. She said that there were six children and two adults living in Frank and Denise's home. The children were all living in one bedroom. Under the department's policy, Priscilla would not be allowed to share a bedroom with a teenage male. The third bedroom was reserved for a niece who went back and forth from college. She said the children had expressed concerns about living

5

under the crowded circumstances. They also felt that Frank and Denise's rules were too strict and that it was loud sometimes.

Armstrong further testified that Frank and Denise did not want to terminate the guardianship because they felt the children needed the structure and supervision they provided them. She also assessed whether the children's interests would be better served by remaining with Frank and Denise or returning to Cindy. She considered the children's desire to return and Cindy's sobriety, but made her determination on the fact that Frank and Denise did not want to terminate the guardianship.

Frank testified he was not aware that anything untoward was happening with the children while they were at Cindy's house except that Isaiah left and wandered around. He agreed it was "not really" appropriate for Priscilla to share a room with males who were not her brothers, but only after being pressed on the issue. He said he was upset when he found out that Priscilla was not attending school, but that Denise handled the problem and placed Priscilla on home study. He said he and Denise received $1,500 in financial aid each month for all three children, including when they were with Cindy during the summer.

During argument, counsel continued to disagree on the applicability of section 388 to the proceedings. The juvenile court expressed its concern with terminating the guardianship on a section 388 petition, stating:

> "[Frank and Denise] went through the process of a Kin-GAP guardianship [and] dependency was terminated. That's the permanent plan. Now many years later [Cindy is] attempting to undo that. And I'm not saying her motives aren't proper, but it seems to me she would have to demonstrate that the guardianship is not safe [or] appropriate .… That's the problem I have. And these particular facts, I'm not convinced a 388 is the proper vehicle, otherwise … guardians could be fending off 388's all the time."

The juvenile court deferred ruling and asked counsel to file supplemental briefing on whether it could rule on the section 388 petition in light of the dismissal of the

6

dependency action. The court told counsel they did not need to argue changed circumstances or the best interest of the child, noting that they had argued those issues very well. In fact, the court indicated the evidence strongly supported granting the petition. The court stated:

> "I will tell you this, and it's probably a bad tease on my part, I think the evidence … is … fairly compelling for [Cindy] with regards to changed circumstance and best interest of the children. But I'm not going to put the cart before the horse. If there's not a proper legal vehicle in place right now, then they are not going to get there. They have to go a different route."

In its supplemental briefing, county counsel argued that because Cindy did not ask the court to terminate the Kin-GAP legal guardianship without dependency, California Rules of Court, rule 5.740[3] did not permit the use of a section 388 petition to reinstate jurisdiction to review the status of the Kin-GAP guardianship. Even if the court had reinstated jurisdiction, county counsel further argued the court would have to follow the provisions of "[section] 361.3, including the possible legal option of court ordered reunification services to the [Kin-GAP] legal guardians."[4]

Katherine Martindale, program manager for the children's Kin-GAP guardianship, filed a declaration in support of the department's recommendation to deny Cindy's section 388 petition. She explained that it was the department's policy to recommend denial when a parent whose children were in Kin-GAP guardianship requested reunification services, including family maintenance services, by means of a section 388 petition. However, if the Kin-GAP guardians or another interested party, including the parent, asked to terminate the guardianship under section 388, the juvenile court could consider additional reunification services to the parent under section 366.3. Since Frank

---

**3**    Subsequent references to rules are to the California Rules of Court.

**4**    We presume this is a typographical error and that county counsel meant to refer to section 366.3 since section 361.3 pertains to the relative placement preference.

7

and Denise had not terminated the guardianship and since Cindy was asking for family maintenance services rather than termination of the guardianship, Martindale recommended the juvenile court deny her section 388 petition.

In May 2014, the juvenile court reconvened the hearing and denied Cindy's section 388 petition. The court explained:

> "[O]nce a permanent plan is in place and dependency is terminated [I do not think] that a court can or should entertain requests to undo or dismantle a permanent plan because a parent who has lost his or her kids is now of the mind that he or she should get them back. ¶ … ¶
>
> "Kin-GAP guardianships can be undone if guardians request it, or if the guardians themselves are neglectful or abusive. The guardians or interested parent can petition to terminate the guardianship. There is a vehicle to do that. And it has not been utilized here.
>
> "For the reasons stated, [Cindy's] petition is denied. I do so specifically on legal grounds. And I adopt the [d]epartment's supplemental points and authorities in support of this position. I make no finding at this time as to the evidence presented by [Cindy] in factual support of her petition."

This appeal ensued.

## DISCUSSION

Cindy contends the juvenile court erred in ruling that her section 388 petition was not the proper vehicle to change its order placing the children in legal guardianship. We concur.

"A decision that rests on an error of law constitutes an abuse of discretion." (*In re Esperanza C*. (2008) 165 Cal.App.4th 1042, 1061.) In this case, the juvenile court erred in deciding that it lacked authority under section 388 to terminate Frank and Denise's legal guardianship and return the children to Cindy's custody under family maintenance. Though it is not clear from the record what procedure the juvenile court believed Cindy should have followed in order to regain custody of her children, it *is* clear there were

8

several areas of confusion that contributed to the court's ruling, namely a juvenile court's jurisdiction over a guardianship and the difference between a parent seeking to terminate a guardianship and the state seeking to do so.

Preliminarily, it bears noting that although guardianship is a more stable solution than foster care, it is not irrevocable and thus falls short of the secure and permanent placement intended by the Legislature. (*In re Celine R.* (2003) 31 Cal.4th 45, 53.) Continuity in a legal guardianship is not equivalent to the security and stability of a permanent caretaker. "The goal of permanency planning is to end the uncertainty of foster care and allow the dependent child to form a long-lasting emotional attachment to a permanent caretaker." (*In re Emily L.* (1989) 212 Cal.App.3d 734, 742.) Further, nothing precludes a parent whose parental rights have not been terminated from seeking to regain custody of their dependent minors. Indeed, the dependency scheme provides for such a result in the case of a legitimate change of circumstances. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309.)

When the juvenile court establishes a kinship guardianship as it did here, it dismisses its jurisdiction under section 366.3 in recognition of the fact that the kinship guardianship is a permanent plan for the child and there is no need for ongoing, scheduled court and social services supervision of the placement. (§§ 11361 & 11386, subd. (e).) However, the juvenile court still maintains jurisdiction over the child as a ward of the legal guardianship and can vacate its order dismissing its dependency jurisdiction. (§§ 366.3, subds. (a) & (b) & 366.4.)

In this case, the juvenile court reinstated its dependency jurisdiction in September 2013 and retained it. Consequently, the court had authority to act on any motion brought to terminate the guardianship.

Further, "[a] parent has the continuing right to petition the [juvenile] court for a modification of any of its orders based upon changed circumstances or new evidence

9

pursuant to section 388." (*In re Marilyn H.*, *supra*, 5 Cal.4th at pp. 308-309.) This includes the right to petition the court to terminate guardianship. Rule 5.740(c) requires that a petition to modify a guardianship must comply with rule 5.570. Rule 5.570 states that a petition made under section 388 must be made on form "Request to Change Court Order" (form JV-180) and be liberally construed. (Rule 5.570(a).)

> Section 388 provides in pertinent part that: "Any parent or other person having an interest in a child who is a dependent child of the juvenile court … may, upon grounds of change of circumstance or new evidence, petition the court in the same action in which the child was found to be a dependent child of the juvenile court … for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court."

At the hearing on the section 388 petition, the parent has the burden of proving by a preponderance of the evidence that there is new evidence or that there are changed circumstances that make a change in placement in the best interests of the child. (*In re Stephanie M*. (1994) 7 Cal.4th 295, 317.)

One of the arguments that seemed to hold some sway was that Cindy did not ask to terminate the guardianship. However, it is clear from the face of the JV-180 that she did. Item number 6 of the preprinted form requires the petitioner to identify the date(s) the judge made the order(s) that the petitioner wants changed. Cindy specified the dates that the court ordered a permanent plan of Kin-GAP guardianship for the children. In our view, that can only be interpreted as a request to terminate the guardianship. Thus, she was not, as Ms. Martindale believed, trying to change the court's order with respect to reunification. Had she so intended, she would have specified the date the court denied her reunification services. Rather, her section 388 petition on its face was asking for termination of the Kin-GAP guardianship and the children's return to her under family maintenance services.

Perhaps the greatest area of confusion arose from the misconception that section 366.3, subdivision (b) applied to Cindy's circumstances. Section 366.3 addresses the termination of a legal guardianship initiated by the state or the guardians. It requires the department to prepare a report addressing whether the child can safely remain in or be returned to the legal guardian's home without terminating the legal guardianship. If the juvenile court terminates the guardianship and parental rights have not been terminated, the statute requires the department to notify the parent and allows the parent to participate in a new permanency planning hearing and request custody or reunification services.[5]

Thus, section 366.3 applies in a case, for example, where the state removes a child from a guardian under a protective warrant and seeks to change the permanent plan. The juvenile court must determine if the guardianship can be preserved through services. If it

---

[5] Section 366.3, subdivision (b) provides in relevant part:

"[T]he proceedings to terminate a legal guardianship that has been granted pursuant to Section 360 or 366.26 shall be held … in the juvenile court …. Prior to the hearing on a petition to terminate legal guardianship pursuant to this subdivision, the court shall order the county department of social services … to prepare a report … that shall include an evaluation of whether the child could safely remain in, or be returned to, the legal guardian's home, without terminating the legal guardianship, if services were provided to the child or legal guardian. If applicable, the report shall also identify recommended family maintenance or reunification services to maintain the legal guardianship and set forth a plan for providing those services.…

"Unless the parental rights of the child's parent or parents have been terminated, they shall be notified that the legal guardianship has been revoked or terminated and shall be entitled to participate in the new permanency planning hearing. The court shall try to place the child in another permanent placement. At the hearing, the parents may be considered as custodians but the child shall not be returned to the parent or parents unless they prove, by a preponderance of the evidence, that reunification is the best alternative for the child. The court may, if it is in the best interests of the child, order that reunification services again be provided to the parent or parents."

11

cannot be and the guardianship is terminated, the parent may vie for custody or reunification services at the hearing on a new permanent plan. (See *In re Jessica C.* (2007) 151 Cal.App.4th 474.) We believe it was the discussions concerning section 366.3 that caused the juvenile court to order the assessment of Frank and Denise as guardians and caused Cindy's attorney to withdraw the section 388 petition filed in August requesting the return of the children to Cindy's custody and file a new section 388 petition requesting family maintenance services.

Further, a parent seeking to terminate a legal guardianship does *not* have to show that the guardianship is detrimental to the children. As we stated above, the parent has to show by a preponderance of the evidence that circumstances have changed such that termination of the guardianship serves the best interests of the child. The department, on the other hand, *is* required to show that the child will suffer detriment by clear and convincing evidence before the department can remove the child from the guardian and initiate termination of the guardianship. This stands to reason because the department acting on the authority of the state is interjecting itself into the private matters of the family and must have a compelling reason for doing so. (*In re Michael D.* (1996) 51 Cal.App.4th 1074, 1081-1087 (*Michael D.*).)

Finally, allowing a parent to attempt reunification with his or her children by means of a section 388 petition serves the Legislative intent and public policy of encouraging parents to correct earlier problems to preserve the family unit. This intent would be thwarted if a parent (whose parental rights have not been terminated) lost all ability to regain custody of his or her children despite having demonstrated he or she can provide the most desirable permanent plan; i.e., return to parental custody. (*Michael D.*, *supra*, 51 Cal.App.4th at p. 1086.) Further, a parent's ability to file a section 388 petition does not undermine the child's stability in a guardianship because there are safeguards to protect against a frivolous petition. First, the parent bears the burden of proving the

12

change serves the child's best interest.  More importantly, the decision to grant a section 388 petition lies in the sound discretion of the juvenile court.  (*In re D.B.* (2013) 217 Cal.App.4th 1080, 1088-1089.)

We conclude the juvenile court erred in denying Cindy's section 388 petition and reverse.

## DISPOSITION

The order denying Cindy's section 388 petition is reversed and the juvenile court is directed to conduct a new hearing and consider the merits of Cindy's petition under section 388 and any evidence developed subsequent to the filing of her petition.

## CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re Priscilla D. et al., Persons Coming Under the Juvenile Court Law. | |
| FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>CINDY C.,<br><br>Defendant and Appellant. | F069317<br><br>(Super. Ct. Nos. 79112-6, 79112-7 & 79112-8)<br><br>**ORDER** |

As the nonpublished opinion filed on February 4, 2015, in the above entitled matter hereby meets the standards for publication specified in the California Rules of Court, rule 8.1105(c), it is ordered that the opinion be certified for publication in the Official Reports.

_____
GOMES, Acting P.J.

WE CONCUR:


_____
DETJEN, J.


_____
FRANSON, J.