Filed 8/30/21  In re C.K. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re C.K. et al., Persons Coming Under Juvenile Court Law. | B307983 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MONICA Q.-B.,<br><br>Defendant and Appellant. | (Los Angeles County Super. Ct. No. DK22840A-C) |

APPEAL from orders of the Superior Court of Los Angeles County, Stephen C. Marpet, Commissioner.  Affirmed.

Anne E. Fragasso, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Tracey Dodds, Principal Deputy County Counsel, for Plaintiff and Respondent.

————————————

## INTRODUCTION

Mother appeals after the juvenile court denied her Welfare and Institutions Code section 388 petitions.[1] Mother contends that the juvenile court erred when it refused to grant her a continuance and a hearing. We affirm.

### *FACTUAL AND PROCEDURAL BACKGROUND*

### *1. Jurisdiction Based on Parental Drug Use and Domestic Violence*

The family consists of mother, father, and her three children (born in 2003, 2011, and 2014).[2] Father is the biological father to the youngest child. He is a stepfather to the two older children. At the time of these dependency proceedings, he was in Kern State prison. Father is not at issue in this appeal and we therefore do not discuss facts pertaining to him any further.

The family came to the Los Angeles County Department of Children and Family Services' (DCFS) attention when mother was arrested for driving a stolen car; the children were in the car at the time of the arrest. On May 5, 2017, after discovering mother was on parole for felony assault, DCFS detained the children from mother. On May 10, 2017, DCFS filed a petition pursuant to section 300, subdivisions (a) and (b), alleging

---

[1] All subsequent statutory references are to the Welfare and Institutions Code.

[2] The eldest child turned 18 years old while this appeal was pending. In a June 9, 2021 order regarding this child, the court wrote: "Minor is anticipated to be a Non-Minor Dependent as defined under [section] 11400 [subdivision] (v) by the next court hearing and the court transfers the case to 21ccjp02716." The court then set a hearing for her as a non-minor dependent in December 2021. We understand from this record that the juvenile court currently maintains jurisdiction over the eldest child.

jurisdiction over the children based on the parents' drug use and domestic violence.

On July 11, 2017, the juvenile sustained allegations under section 300, subdivisions (a) and (b), that the parents committed domestic violence in front of the children, parents had an extensive history of substance abuse, and they were current users of amphetamines, methamphetamines, and marijuana, which rendered them incapable of caring for the children.

The court ordered reunification services for mother, including a 6-month inpatient drug program, a 12-step program, weekly drug testing, a 52-week batterer's intervention program, individual counseling to address case issues, and a psychiatric evaluation.

## 2. *Termination of Reunification Services*

Over the next 15 months, mother entered and was discharged from 11 different drug rehabilitation programs, mostly because she continued to test positive for drugs. (Mother was also expelled from some programs for breaking other house rules.)

On October 9, 2018, the juvenile court terminated mother's reunification services as to all three children, and set the matter for a section 366.26 hearing. The recommended permanent plan for the children was legal guardianship. On May 6, 2019, the juvenile court placed the two younger children in kinship guardianships.[3] The court then terminated its dependency

---

[3] "When the juvenile court establishes a kinship guardianship as it did here [for the two younger children], it dismisses its jurisdiction under section 366.3 in recognition of the fact that the kinship guardianship is a permanent plan for the child and there is no need for ongoing scheduled court and social services supervision of the placement. (§§ 11361, 11386, subd. (e).) However, the juvenile court still maintains

jurisdiction over them. The eldest child remained under the juvenile court's jurisdiction.

### 3.    *Mother's First Section 388 Petition*

Fifteen months after reunifications services were terminated, on January 31, 2020, mother filed a section 388 petition, requesting the juvenile court reinstate reunification services with her eldest child. Mother alleged that following the court's October 2018 order terminating reunification services, she completed a parenting class and domestic violence program, obtained a mental health assessment, participated in individual counseling, completed a drug rehabilitation program with after care, and had regular daily visitation with her eldest child. Mother declared that it was in the child's best interest to be raised by mother. She attached various letters showing she completed programs. On February 3, 2020, the juvenile court denied mother's petition on the grounds that the request did not state new evidence or a change of circumstances.

### 4.    *Mother's Section 388 Petition at Issue on Appeal*

Five weeks after the filing of the first section 388 petition, on March 5, 2020, mother filed section 388 petitions for each of her children, alleging that she had maintained her sobriety since November 2019. Mother attached a letter from a sober living program showing that she had been residing there since November 28, 2019, and her children could stay with her until permanent housing could be arranged. Mother also attached a letter from her latest drug rehabilitation program, dated March 4, 2020, stating mother was still attending the program. Mother

---

jurisdiction over the child as a ward of the legal guardianship and can vacate its order dismissing its dependency jurisdiction. (§§ 366.3, subds. (a) & (b), 366.4.)" (*In re Priscilla D.* (2015) 234 Cal.App.4th 1207, 1216.)

4

requested reinstatement of reunification services, and unmonitored visitation or placement with mother.

In its August 3, 2020 report, DCFS reported that mother stated she last used methamphetamines on June 2, 2019, and that she no longer saw any of the people with whom she used to do drugs. Mother also stated that she had completed the court-ordered drug rehabilitation programs with aftercare, and the other court-ordered programs.

The juvenile court set a hearing on mother's section 388 petitions. The hearing was continued several times for various reasons, but eventually took place on August 12, 2020. A day before the hearing, on August 11, 2020, DCFS filed a last minute information report for the court, which stated that on Monday, August 3, 2020, mother had tested positive for methamphetamine at her sober living facility. Facility staff tested mother because she had come in after curfew that night. After the positive result, staff administered a back-up/follow-up test, which was also positive for methamphetamine. Mother denied using drugs, and said that she had been around friends who were using, and she got smoke in her system. Following the positive results, the facility discharged mother.[4]

---

[4] There is some confusion about the date of the tests. The DCFS report states that mother "yielded a positive result for methamphetamines on 8/3/20." Later in the same report is, "On 8/5/20 DCFS received information from [the director of the sober living home where mother was residing]. He reported that on 8/2/20 mother was discharged from the sober living home due to a positive test for methamphetamines. According to him, mother came in late on Sunday evening after curfew and it was decided by staff to test her. A back-up and follow-up test was administered after that and again the tested [sic] came back positive for methamphetamine." Whether the tests were

At the beginning of the hearing on August 12, 2020, the juvenile court stated: "We're here on calendar for a hearing on a 388 with a .26 trailing as to [the eldest child]. [¶] We're here on a hearing on a 388 filed by mother on the three children." The court asked mother's counsel if she wished to be heard.

Mother's counsel then requested a continuance, stating mother never acknowledged the relapse and that the positive test results were not confirmed. Her attorney stated that mother's treatment at a hospital emergency room for an asthma attack the Wednesday before her positive test may have accounted for the results. Counsel also requested that the juvenile court grant a continuance so that mother could get a hair follicle test to disprove the positive drug test. The eldest child's counsel joined in mother's request for a continuance; she later argued in favor of granting mother's section 388 petition.

DCFS acknowledged that the test results attached to the last minute report were poorly uploaded, but asserted that they were confirmed test results and that the "isomer information" showed the tests were for illicit drugs, not prescription medications. DCFS stated the information before the court should be sufficient but that it could obtain a complete copy of the test results if needed.

The juvenile court denied mother's request for a continuance. The court stated: "I'm not looking at one test. I'm looking at two tests. Both tests show that mother tested positive for methamphetamine and this was done at the program where mother was living. According to this report, [mother] acknowledge[d] everything, packed up her bags, walked out and didn't make a fuss or a fight or say it didn't happen. And, now,

administered the same day or on consecutive days is immaterial to our analysis.

6

you're telling me that she doesn't believe it happened.  But if you wish to be heard regarding the actual 388, I'm happy to listen."

Mother's counsel then requested mother be granted monitored visits for all of the children in the home of the eldest child's caretaker.  After entertaining brief oral argument, the juvenile court denied the section 388 petitions as to all the children based on mother's relapse.  The court found the eldest child appropriately placed and that her permanent plan was to be emancipated with a caring adult to serve as a life-long mentor.

On September 30, 2020, mother filed a timely notice of appeal.

## DISCUSSION

Mother argues the juvenile court erred when it denied (1) a hearing on her section 388 petitions and (2) the request to continue the hearing.  We disagree.

Taking mother's contentions in reverse order, we first observe that the juvenile court did in fact hold a hearing on mother's section 388 petitions.  At the August 12, 2020 court appearance, the court stated "We're here on the hearing on a 388 filed by mother on the three children."  The court then asked mother's counsel if she wished to be heard on the matter.  Counsel then addressed the juvenile court.  We reject mother's argument on this point.[5]

---

[5] It is unclear what the court may have meant when, according to the reporter's transcript, it stated at the hearing, "I see no need to go forward – to deny it.  I'm not talking – I'm not looking at one test.  I am looking at two tests."  Regardless, the court next said, "But if you wish to be heard regarding the actual 388, I'm happy to listen."  Counsel for mother, the eldest child, and DCFS argued briefly.  No witnesses were called.

The minute order for the August 12, 2020 hearing is also unclear:  "The 388 WIC petition filed is denied without a hearing.

7

Mother's central argument is that the court abused its discretion in denying her request for a continuance of the August 12, 2020 hearing.  Section 352 governs continuances in dependency hearings and requires the party seeking a continuance to file "written notice . . . at least two court days prior to the date set for hearing, together with affidavits or declarations detailing specific facts showing that a continuance is necessary." (§ 352, subd. (a)(3).)  Only for good cause will the trial court entertain an oral motion for continuance.  (*Ibid*.)  The juvenile court may grant a continuance if it is not contrary to the minor's interests and "upon a showing of good cause and only for that period of time shown to be necessary by the evidence presented at the hearing on the motion for the continuance." (§ 352, subd. (a)(2).)  The statute requires the court to "give substantial weight to a minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements."  (§ 352, subd. (a)(1).)  "We review the denial of a continuance for abuse of discretion."  (*In re Giovanni F.* (2010) 184 Cal.App.4th 594, 605.)

Mother argues that because she did not receive the last minute information for the court until the day of the hearing, she was in no position to refute the test results.[6]  Although DCFS

---

[¶]  The court initially denies mother's counsels [*sic*] request for a continuance.  [¶]  The court after reviewing the evidence and hearing oral argument will deny the mother's 388 Petition finding that it's not in the child's best interest to grant the Petition noting the mother's positive drug tests."  The reporter's transcript shows the court in fact held a hearing.

[6]      The report was electronically filed with the court on August 11, 2020, the day before the hearing.

was apparently slow in serving mother with the report – DCFS admits it received test information on August 5, 2020 – the juvenile court did not abuse its discretion in denying mother's request for a continuance. Mother was aware of her positive test on either August 2 or August 3, 2020, nine or 10 days before the section 388 hearing. She was immediately discharged from her sober living arrangement. It would have been foolhardy to believe that DCFS would not alert the court to the positive tests, and, of course, it did. Mother had adequate time to challenge the test or arrange for one of her own, including the hair follicle test to which counsel referred at the hearing. Even though we do not decide the appeal on this ground, mother was in a position to comply with the statutory requirement that a motion to continue must be made in writing two days before a hearing. (§ 352, subd. (a).) Even if she did not have time to challenge the tests or to re-test before the hearing, mother knew by August 3 that she had failed two drug tests and had been discharged from her residence—enough to know that she might need a continuance of the upcoming hearing. The trial court reasonably could have rejected mother's unsupported statements at the hearing that she was exposed to secondhand smoke, or that the positive test was attributable to medication she received at an emergency room for an asthma attack the Wednesday before her Monday drug test.

We conclude that mother was given, and participated in, a hearing under section 388, and the juvenile court did not abuse its discretion in denying a continuance.


/ / /

/ / /

9

### *DISPOSITION*

The juvenile court's orders are affirmed.


RUBIN, P. J.

WE CONCUR:


MOOR, J.


KIM, J.