Filed 4/14/26 In re E.V. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re E.V., a Person Coming Under the Juvenile Court Law. | B345053 |
| | (Los Angeles County Super. Ct. No. 22CCJP01585B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. E.V., Minor and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Gabriela H. Shapiro, Juvenile Court Referee. Affirmed.

John L. Dodd, under appointment by the Court of Appeal, for Minor and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Navid Nakhjavani, Deputy County Counsel, for Plaintiff and Respondent.

———————————————

**INTRODUCTION**

Minor Elijah V. is an Indian child within the meaning of the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. §. 1901, et seq.) and the California Indian Child Welfare Act (Cal-ICWA; see Welf. & Inst. Code, § 224, et seq.).[1] Elijah appeals from the juvenile court's order of legal guardianship as his permanent plan. Elijah's parents do not appeal. Elijah does not contend a different permanent plan would be more appropriate in his case, and instead he argues the court erred when it failed to require testimony from a qualified expert witness (QEW) at the permanency planning hearing before ordering guardianship as his permanent plan. The tribe at issue in this case essentially waived any requirement that QEW testimony be presented at such a hearing, and it agreed with the Department's recommendation that the paternal grandparents serve as Elijah's legal guardians. Accordingly, we affirm.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

## FACTUAL AND PROCEDURAL BACKGROUND

A.      *Dependency Proceedings*

Marci C. and Joe V. have two children, Elijah and his older brother Anthony V.[2]  On September 20, 2022, the Los Angeles County Department of Children and Family Services (Department) filed a petition pursuant to subdivisions (a), (b), and (j) of section 300.  The petition alleged Marci and Joe engaged in domestic violence in Anthony's presence and while Marci was pregnant with Elijah; Joe shot the maternal aunt in the foot when the maternal aunt stabbed him in the neck in Anthony's presence; Elijah tested positive for marijuana and alcohol at birth; and Marci had a history of substance abuse and was a current abuser of marijuana and alcohol.  The petition also alleged Anthony was a current dependent of the juvenile court due to the parents' domestic violence and each parent failed to protect Elijah from the other.

The juvenile court sustained the allegations of substance abuse against Marci under subdivision (b) of section 300 and the allegations of domestic abuse against Joe as well as the failure to protect allegations against Marci under subdivision (j) of section 300.  It ordered Elijah placed with the paternal grandparents, who also had custody of Anthony.  The juvenile court terminated family reunification services on September 6, 2023, after the parents failed to comply with their case plans.  Elijah remained with the paternal grandparents throughout the dependency proceedings and the Department reported he and

---

[2]      For ease of reference, we refer to the parties by their first names with no disrespect intended.

3

Anthony were thriving in their home.  After reunification services were terminated, the Department recommended legal guardianship as the permanent plan for Elijah.  The paternal grandparents had also become legal guardians to Anthony.  The court ordered Kin-GAP guardianship for Elijah and terminated jurisdiction on February 19, 2025.[3]

B.  *ICWA Compliance*

Marci is a registered member of the Manda, Hidatsa, Arikara (MHA) Nation also known as the Three Affiliated Tribes through the maternal grandmother, who is also a member.[4]  At the September 21, 2022 detention hearing, the juvenile court ordered the Department to provide notice of the dependency petition to the MHA Nation and inquire whether Elijah was eligible for enrollment and whether the MHA Nation would provide a QEW.  Shelby Fox, the ICWA representative for the MHA Nation, responded that Elijah was not a current member but was eligible for membership.  Fox stated the MHA Nation would move to intervene and requested notice of all court hearings as well as any service documents and notices of any

---

[3]  "The Kin-GAP program is a state program that provides ongoing funding for children who exit the dependency system to live with relative legal guardians.  In order to receive funding under the program the county welfare agency must enter into a written binding agreement with the relative guardian and dependency jurisdiction must be terminated.  (§§ 11386, 11387.)" (*In re Priscilla D.* (2015) 234 Cal.App.4th 1207, 1211 & fn. 2; accord *In re N.F.* (2023) 95 Cal.App.5th 170, 175, fn. 6.)

[4]  Joe and the paternal relatives denied any Native American ancestry.

4

change in placement. The Department provided notice to the MHA nation as requested throughout the proceedings. The tribe appointed Paula Snow as the QEW for this case on September 27, 2022.

On December 21, 2022, Fox filed a tribal information form (ICWA-100) stating the MHA Nation was intervening in Elijah's case. Fox checked the box stating there had been ongoing communication between the Department and the tribe and the tribe was consulted regarding appropriate services for and placement of Elijah. Fox stated the tribe knew of and agreed with Elijah's current placement with the paternal grandparents. Fox also checked the box stating the tribe "has been consulted regarding the appropriate permanent plan for the child should reunification with the parent(s), legal guardian(s), or Indian custodian(s) fail." Fox also stated the Department had discussed the option of a tribal customary adoption of Elijah.

At the February 8, 2023 jurisdiction and disposition hearing, the parties stipulated to Snow testifying as a QEW for the MHA Nation. Snow testified she was familiar with the family because she was also the QEW in Anthony's dependency case. She further testified the parents' actions and choices "d[id] not meet the cultural standards of parenting for [the] MHA Nation in the past or at this time." Snow opined that Elijah would be "in danger" if placed back in the parents' care and that the Department had made reasonable and active efforts to prevent separation of the family. Snow further opined, "The child is placed with immediate family, and that is a placement preference for the Indian Child Welfare Act, and I believe the child is where he should be with family. I support that placement." All parties, including Elijah's counsel, supported his removal from the

5

parents and indicated he was doing well in his placement with the paternal grandparents.

In June and July 2023, the Department invited Fox to child and family team meetings with Marci, but Fox did not or was unable to attend. In August 2023, the Department recommended termination of reunification services and attempted to contact Fox multiple times to obtain the MHA Nation's position on the issue. At the six-month review on August 16, 2023, Joe's counsel requested and received a continuance of the court's termination of reunification services ruling to allow the MHA Nation time to respond.

On August 18, 2023, Fox filed a second ICWA-100, affirming there had been ongoing consultation and communication with the Department, particularly with regard to Elijah's placement. Fox stated the tribe agreed with Elijah's placement with the paternal grandparents and that the Department had made active efforts to prevent separation of the family. Fox stated the MHA Nation agreed with the Department's recommendation to terminate family reunification services for the parents. Fox confirmed the tribe agreed with a permanent plan that called for the paternal grandparents acquiring legal guardianship of Elijah.

After the juvenile court terminated reunification services, the Department continued to communicate with the tribe regarding the permanent plan. On February 16, 2024, when the Department had been unable to speak with Fox, the children's social worker spoke with Fox's superior, Nicole Poitra. Poitra stated the tribe agreed with the permanent plan of legal guardianship with the paternal grandparents and that a

6

representative of the MHA Nation would be present at the permanency planning hearing on March 13, 2024.

The March 13, 2024 hearing was continued to allow the Department to confirm Kin-GAP eligibility and to obtain Elijah's birth certificate. On September 11, 2024, Fox appeared remotely for the MHA Nation and had no objections or any comments regarding the court's finding that "the Department continues to provide active efforts to the child to plan toward permanence in his life and is working in collaboration with the MHA nation and maintaining contact and insuring culturally appropriate services of the child. [¶] The court anticipates the permanent plan to be recommended to be guardianship . . ." The court then granted the Department's request for a continuance of the permanency planning hearing to allow the Department to finalize Kin-GAP eligibility and to obtain Elijah's birth certificate.

The juvenile court commenced the permanency planning hearing on December 18, 2024. Neither Snow nor Fox was present for this hearing and the court noted that in an off-record discussion, the parties discussed whether a permanency plan recommendation of guardianship for an Indian child required testimony from a QEW. The court issued a briefing schedule and continued the hearing.

Elijah's counsel relied on section 361.7, subdivision (c) to argue that QEW testimony was required when "foster care placement or guardianship" was ordered. The Department took the position that QEW testimony was not required where the permanent plan was for guardianship, citing particular sections of ICWA, Cal-ICWA, and the California Rules of Court, rule 5.486, which all required QEW testimony only when the child was removed from his parents' custody and when the court

terminated parental rights. The Department submitted evidence that the State of California's Department of Social Services and the MHA Nation interpreted the relevant statutes and rules to require QEW testimony only at removal and termination of parental rights. The Department additionally submitted a last minute information to the court of its attempts to contact the MHA Nation regarding the issue: In January 2025, the Department emailed Fox regarding the potential need for a QEW for the recommendation of legal guardianship. "On 1/28/25, Ms. Fox responded that their tribe does not require a QEW testimony to be presented for a guardianship proceeding." When the Department continued to ask whether the MHA Nation could provide a QEW, Fox directed the inquiries to Poitra.

On February 19, 2025, the juvenile court concluded a QEW was "absolutely necessary" at disposition if a child was removed from the parents' custody and at termination of parental rights. The court noted there were no published cases addressing whether a QEW was required to testify when a guardianship was recommended at a permanency planning hearing, but based on its review of the law and the policy statements by the MHA Nation and various agencies, it concluded a QEW was not required in this case. The juvenile court ordered a permanent plan of legal guardianship with Kin-GAP funding and terminated jurisdiction. Elijah timely appealed.

## DISCUSSION

A.  *Governing Law and Standard of Review*

Congress enacted ICWA "in response to 'rising concern in the mid-1970's over the consequences to Indian children, Indian

8

families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes.' " (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1128 (*Dezi C.*); see *In re Claudia R.* (2025) 115 Cal.App.5th 76, 84 (*Claudia R.*).)

"ICWA establishes minimum standards for state courts to follow before removing Indian children from their families and placing them in foster care or adoptive homes and does not prohibit states from establishing higher standards. [Citations.] Indeed, ICWA expressly yields to state laws that provide 'a higher standard of protection to the rights of the parent or Indian custodian of an Indian child . . . ' " (*Dezi C., supra,* 16 Cal.5th at p. 1129.) "ICWA gives 'Indian tribes concurrent jurisdiction over state court child custody proceedings that involve Indian children living off of a reservation.' [Citation.] The tribe also has the power to petition the court to invalidate any action taken in a custody proceeding if the action violated ICWA. (25 U.S.C. § 1914; see also Welf. & Inst. Code, § 224, subd. (e).) Thus, when ICWA applies, 'the Indian child's tribe shall have a right to intervene at any point' in a proceeding involving the removal of an Indian child from their family. [Citation.]" (*Dezi C.,* at p. 1129.)

In 2006, the California Legislature passed Cal-ICWA (Senate Bill No. 678 (2005–2006 Reg. Sess.)), "which 'enacted provisions that affirm ICWA's purposes (§ 224, subd. (a)) and mandate compliance with ICWA "[i]n *all* Indian child custody proceedings" (§ 224, subd. (b)).' " (*Dezi C., supra,* 16 Cal.5th at p. 1130.)

Under Cal-ICWA, section 224.6, subdivision (b) addresses when the testimony of a QEW is required: "In considering whether to remove an Indian child from the custody of a parent or Indian custodian or to terminate the parental rights of the parent of an Indian child, the court shall . . . [¶] . . . Require that a qualified expert witness testify regarding whether continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child."[5]

In support of his position, Elijah relies on section 361.7, subdivision (c), which states: "A foster care placement or guardianship shall not be ordered in the proceeding in the absence of a determination, supported by clear and convincing evidence, including testimony of a qualified expert witness, as defined in Section 224.6, that the continued custody of the child

---

[5] Cal-ICWA is consistent with ICWA, which also requires QEW testimony at "foster care placement" and termination of parental rights stages. (See 25 U.S.C. § 1912(e)-(f); 25 U.S.C. § 1903, subd. (1)(i) [" 'foster care placement' which shall mean any action removing an Indian child from its parent or Indian custodian for temporary placement in a foster home or institution or the home of a guardian or conservator where the parent or Indian custodian cannot have the child returned upon demand, but where parental rights have not been terminated"].) Elijah does not contend ICWA requires QEW testimony when a legal guardianship is recommended as a permanent plan. He instead relies on Cal-ICWA, specifically section 361.7, subdivision (c), to support his argument. As stated, "ICWA expressly yields to state laws that provide 'a higher standard of protection to the rights of the parent or Indian custodian of an Indian child . . . .' " (*Dezi C., supra,* 16 Cal.5th at p. 1129.)

10

by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child."

" 'We review applicable legal principles de novo, but apply a deferential standard of review to the court's exercise of discretion and resolution of disputed facts.' " (*In re Rebecca S.* (2010) 181 Cal.App.4th 1310, 1314.) We review the trial court's selection of a permanent plan in a child dependency proceeding for an abuse of discretion. (*In re A.S.* (2018) 28 Cal.App.5th 131, 144; *In re Ramone R.* (2005) 132 Cal.App.4th 1339, 1351.)

B.     *Analysis*

Elijah argues a QEW was required at the section 366.26 hearing because section 361.7, subdivision (c), requires the testimony of a QEW if guardianship is ordered. (§ 361.7, subdivision (c).) Lacking any case law that supports his argument, Elijah relies on out-of-state authorities interpreting ICWA to support his argument. (See *Jude M. v. State* (2017) 2017 Alas.LEXIS 51 [394 P.3d 543]; *Dep't of Human Servs. v. J.G. (In re C.G.)* (2014) 260 Ore.App. 500.)

The Department counters that section 361.7 is inapplicable given the procedural posture of this case. The Department states that section 361.7 concerns the initial removal of Indian children, not permanency planning. Guardianship may be ordered at a disposition hearing. (§ 360, subd. (a).) The Department thus concludes section 361.7, subdivision (c)'s reference to "foster care placement or guardianship" means the child's placement at disposition and not at the permanency planning hearing. According to the Department: "This explains why section 361.7 does not have a subdivision requiring the testimony of a QEW before parental rights are terminated. (See § 361.7, generally.) If

11

section 361.7 applied to permanency planning hearings, the Legislature would undoubtedly have created a subdivision requiring the testimony of a QEW before terminating parental rights similar to the subdivision requiring the testimony of a QEW when making a foster care placement or guardianship order.  It is also nonsensical to believe the Legislature drafted Cal-ICWA to require a QEW for removal and termination of parental rights only (see § 224.6, subd. (b)(1)), but elsewhere created a requirement for the testimony of QEWs for guardianships that it did not include in the Cal-ICWA."

The Department also highlights that the MHA Nation took the position during the underlying proceedings in the juvenile court that a QEW was not required under these circumstances. When asked whether the MHA Nation would provide a QEW for the permanency planning hearing, Fox told the Department that "their tribe does not require a QEW testimony to be present for a guardianship proceeding."  And, the tribe's unwavering position after reunification services were terminated was to support the Department's recommendation of legal guardianship for Elijah (and Anthony).  When Fox appeared at the September 11, 2024 hearing, she made no objection to the court's statement that the permanent plan would be guardianship.

Under these circumstances, we need not decide whether a QEW is required to testify at a permanency planning hearing when the recommendation is for legal guardianship because, even assuming Elijah's reading of section 361.7 is correct, the MHA Nation waived any right to testimony by a QEW at the permanency planning hearing.  The MHA Nation was entitled to do so under California Rules of Court, rule 5.485(a)(2), which permits the waiver of a QEW's testimony as follows:  "Stipulation

12

by the parent, Indian custodian, or tribe, or *failure to object*, may waive the requirement of producing evidence of the likelihood of serious damage only if the court is satisfied that the person or tribe has been fully advised of the requirements of the Indian Child Welfare Act and has knowingly, intelligently, and voluntarily waived them.  Any such stipulation must be agreed to in writing."  (Italics added.)  (Cf. *In re Liliana S.* (2004) 115 Cal.App.4th 585, 589 ["We agree that the Tribe has waived the issue of the children's placement"]; *In re Santos Y.* (2001) 92 Cal.App.4th 1274, 1282 [recognizing that ICWA placement preferences are subject to waiver].)

Here, the MHA Nation was fully advised of the ICWA and Cal-ICWA requirements, having received notice and service copies of all relevant proceedings and documents in the juvenile court.  Moreover, Fox is the ICWA representative for the MHA Nation.  She failed to object to the juvenile court's statement that guardianship was the likely permanent plan during the September 11, 2024 hearing to ask for QEW testimony.  Additionally, when directly asked about a QEW at a permanency planning meeting considering legal guardianship after the court requested supplemental briefing, "Fox responded that their tribe does not require a QEW testimony to be presented for a guardianship proceeding."  The record demonstrates the MHA Nation knowingly, intelligently, and voluntarily waived any QEW requirement.  Under these circumstances, the trial court did not abuse its discretion when it ordered legal guardianship as the permanent plan for Elijah without QEW testimony.

13

## DISPOSITION

The juvenile court's order for legal guardianship and termination of jurisdiction is affirmed.

MARTINEZ, P. J.

We concur:

FEUER, J.

STONE, J.