Filed 10/17/24 In re K.C. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In re K.C., Jr., a Person Coming Under the Juvenile Court Law. | B331849<br><br>(Los Angeles County Super. Ct. No. 20CCJP03803B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>VILMA J.,<br><br>    Defendant and Appellant. | ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING/ MODIFICATION (CHANGE IN APPELLATE JUDGMENT) |

THE COURT:

The above-entitled opinion filed on September 20, 2024 is modified as follows:

On the cover page replace "Conditionally reversed" with "Conditionally affirmed" so it reads: "Conditionally affirmed and remanded with directions."

In the second sentence of the last paragraph on page 2 replace "reverse" with "affirm" so the sentence reads: "We conditionally affirm and remand for the court and the Department to comply with the inquiry and notice provisions of ICWA and Cal-ICWA."

In the first sentence of the Disposition on page 13, replace the word "reversed" with "affirmed," so it reads: "The August 8, 2023 orders granting legal guardianship and terminating jurisdiction over K.C. are conditionally affirmed."

Delete the last sentence of the Disposition on page 13 and replace it with: "If not, the original section 366.26 orders will remain in effect."

Respondent's petition for rehearing; or in the alternative request for modification is denied.

There is a change in the appellate judgment.

---

MARTINEZ, P. J.        FEUER, J.        STONE, J.

2

Filed 9/20/24  In re K.C. CA2/7 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re K.C., Jr., a Person Coming Under the Juvenile Court Law. | B331849 (Los Angeles County Super. Ct. No. 20CCJP03803B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>VILMA J.,<br><br>        Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Tamara Hall, Judge.  Conditionally reversed and remanded with directions.

Sarah Vaona, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Stephen Watson, Senior Deputy County Counsel, for Plaintiff and Respondent.

_____

Vilma J. (Mother) appeals from the juvenile court's orders granting legal guardianship of 13-year-old K.C., Jr., (K.C.) to maternal relatives and terminating jurisdiction over K.C. at the selection and implementation hearing (Welf. & Inst. Code, § 366.26).[1]  Mother's sole contention on appeal is that the Los Angeles County Department of Children and Family Services (the Department) and the juvenile court failed to comply with the inquiry requirements of the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.; ICWA) and the California Indian Child Welfare Act (Cal-ICWA; § 224 et seq.).  Mother argues the Department failed to interview any extended family members, including a paternal aunt and maternal relatives, about the children's possible Indian ancestry, and the court prejudicially erred in finding ICWA did not apply.

We agree the juvenile court and the Department failed to comply with ICWA and Cal-ICWA.  We conditionally reverse and remand for the court and the Department to comply with the inquiry and notice provisions of ICWA and Cal-ICWA.

---

[1]     Further undesignated statutory references are to the Welfare and Institutions Code.

2

## FACTUAL AND PROCEDURAL BACKGROUND

Mother has four children with K.C., Sr. (Father): D.J., K.C., M.C., and Ki. C.[2] Mother also has one child, Ke. C., with Kevin H. On May 25, 2020 the Department received a referral alleging that earlier that day Mother was detained by border patrol agents for drug smuggling while then-12-year-old D.J. and then-10-year-old K.C. were in her care.[3]

On July 16, 2020 the Department filed a dependency petition on behalf of the children under section 300, former subdivision (b)(1) and subdivision (j). The petition alleged Mother placed D.J. and K.C. in a detrimental and endangering situation because the border patrol agents arrested Mother for smuggling methamphetamine while the children were passengers in her car. The petition also alleged Mother had a history of substance abuse, including using illicit drugs during her pregnancy with M.C. and being under the influence of marijuana while caring for the children. Further, Father had a criminal conviction for possession of marijuana for sale, and he had a 15-year history of illicit drug use and was a current abuser of marijuana. In addition, the children were former dependents of the court because of Father's substance abuse.

On August 7, 2020 the juvenile court sustained the allegations against Mother and dismissed the allegations against Father. The court declared the five children dependents of the

---

[2]     Mother appeals only as to K.C.

[3]     The caller reported that Mother left seven-year-old M.C. and four-year-old Ki.C. with maternal aunt Maria before driving to the United States/Mexico border with D.J. and K.C. At the time, three-year-old Ke. C. was with her paternal relatives.

3

court, removed them from Mother under section 361, subdivision (c), and placed them with Father. The court ordered reunification services for Mother and ordered her to complete a full drug and alcohol program with aftercare; submit to weekly random and on demand drug testing; and participate in parenting classes and individual counseling to address domestic violence, substance abuse, and child safety. The court granted Mother monitored visitation for a minimum of nine hours per week with unmonitored daytime visits in a neutral setting upon Mother's submission of six consecutive clean drug and alcohol tests.

On October 8, 2020 the Department received a referral alleging Father smoked marijuana and sold marijuana from the home in the presence of the children. On February 21, 2021 the Department received another referral alleging three-year-old Ke. C. was taken to the hospital by ambulance and tested positive for cannabis. On March 16, 2021 the Department removed D.J., K.C., M.C., and Ki. C. from Father's physical custody and placed the four children with maternal second cousin Kevin M.[4] The Department also removed Ke. C. from Father's custody and placed her with her paternal aunt, Shanee T. (Kevin H.'s sister).

On March 18, 2021 the Department filed a subsequent petition under section 342 alleging that on February 21, 2021 Ke. C. ingested marijuana while in Father's care and supervision; Father failed to keep a March 1, 2021 medical appointment to monitor Ke. C.'s brain tumor; and Father failed to obtain medical treatment for the five children's chronic head lice infestation. On

---

[4] Kevin M. resides with his mother, Mirna E., who is the children's maternal great-aunt.

4

April 14 the court sustained the subsequent petition and removed the children from Father under section 361, subdivision (c).

On August 2, 2022 the juvenile court terminated family reunification services for Mother and Father and set the matter for a selection and implementation hearing (§ 366.26). The hearing was continued multiple times, and on April 25, 2023 Mother filed a section 388 petition seeking six months of reunification services with respect to D.J, K.C., M.C., and Ki. C. Mother stated she was released from prison on August 2, 2022, and while she was incarcerated, she had completed an anger management program, parenting classes, and a drug treatment program. Mother added that she had maintained contact with the four children during and after her release. Mother argued additional months of reunification services would benefit the children because they had a close relationship with her.

At the August 8, 2023 hearing on Mother's section 388 petition, Mother requested the court grant her petition with respect to all four children. The Department recommended the juvenile court grant Mother's section 388 petition as to D.J., M.C. and Ki. C. because they wanted to reunify with Mother, but deny the petition as to K.C. because he wanted no further contact with Mother. K.C.'s counsel confirmed this was what K.C. wanted. The juvenile court granted Mother's section 388 petition as to D.J., M.C., and Ki. C., but denied it as to K.C. The court explained K.C. did not want to reunify with Mother or to have any contact with her.

The juvenile court then proceeded to hold the selection and implementation hearing for K.C. Over Mother's objection, the court appointed Kevin M. and Mirna as legal guardians for K.C. The court ordered visitation for Mother and Father and

5

terminated jurisdiction over K.C. with Kin-GAP funding in place.[5]

Mother timely appealed.[6]

## DISCUSSION

A. *ICWA and Cal-ICWA Inquiry and Notice Requirements*

ICWA and Cal-ICWA require in dependency proceedings that where the court knows or has reason to know an Indian child is involved, notice must be given to the relevant tribes. (25 U.S.C. § 1912(a); § 224.3, subd. (a); *In re Isaiah W.* (2016) 1 Cal.5th 1, 5; *In re Rylei S.* (2022) 81 Cal.App.5th 309, 317 (*Rylei S.*); Cal. Rules of Court, rule 5.481(c)(1).) The notice requirement is at the heart of ICWA because it "enables a tribe to

---

[5] "The Kin-GAP program is a state program that provides ongoing funding for children who exit the dependency system to live with relative legal guardians. In order to receive funding under the program the county welfare agency must enter into a written binding agreement with the relative guardian and dependency jurisdiction must be terminated. (§§ 11386, 11387.)" (*In re Priscilla D.* (2015) 234 Cal.App.4th 1207, 1211, fn. 2.)

[6] In her notice of appeal Mother stated she was appealing from the juvenile court's order denying her section 388 petition and the order granting legal guardianship of K.C. However, Mother only challenges the order granting legal guardianship in her opening brief. She therefore has forfeited or abandoned her appeal from the section 388 order. (See *Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4 [issue not raised on appeal "deemed waived"]; *Swain v. LaserAway Medical Group, Inc.* (2020) 57 Cal.App.5th 59, 72 [""Issues not raised in an appellant's brief are [forfeited] or abandoned.""].)

determine whether the child is an Indian child and, if so, whether to intervene in or exercise jurisdiction over the proceeding." (*In re Isaiah W.*, at p. 5; accord, *In re Antonio R.* (2022) 76 Cal.App.5th 421, 428 (*Antonio R.*).)

The juvenile court and the Department "have an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300 . . . may be or has been filed, is or may be an Indian child." (§ 224.2, subd. (a); see *In re Isaiah W., supra*, 1 Cal.5th at p. 9; *In re J.C.* (2022) 77 Cal.App.5th 70, 77 (*J.C.*).) The duty to inquire begins with initial contact (§ 224.2, subd. (a)) and obligates the juvenile court and child protective agencies to ask all relevant involved individuals whether the child may be an Indian child. (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1132 (*Dezi C.*); *Rylei S., supra*, 81 Cal.App.5th at p. 316; *J.C.*, at p. 77.)

Section 224.2, subdivision (b), imposes on the Department a duty to inquire whether a child in the Department's temporary custody is an Indian child, which "[i]nquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child . . . ." (See Cal. Rules of Court, rule 5.481(a)(1) [the Department "must ask . . . extended family members . . . whether the child is or may be an Indian child"].) "The duty to develop information concerning whether a child is an Indian child rests with the court and the Department, not the parents or members of the parents' families." (*Antonio R., supra*, 76 Cal.App.5th at p. 430; accord, *In re J.K.* (2022) 83 Cal.App.5th 498, 506; see *In re K.R.* (2018) 20 Cal.App.5th 701, 706 ["The juvenile court's duty to inquire . . .

7

is independent of any obligation on the part of the parents of the dependent child."].)

B.     *The Department's ICWA and Cal-ICWA Inquiry*

On July 20, 2020 Mother filed a parental notification of Indian status form on which she checked a box indicating she had no Indian ancestry. On the same date, Father filed a parental notification of Indian status on which he checked a box stating that he "may have Indian ancestry," but he did not identify the Indian tribe or band. At the detention hearing held that day, Father's counsel reported that Father "believes he may have Indian ancestry on his mother's side." The juvenile court ordered the Department "to interview the father and paternal relatives regarding father's claim of American Indian ancestry and attach copies of notices to tribes that are revealed through inquiry of parties." The court added, "If no specific tribe names are revealed, the Department is ordered to notice the Bureau of Indian Affairs and Secretary of the Interior at a minimum assuming that the relatives confirm Indian ancestry." The court also found it had no reason to know that ICWA applied as to Mother.

Pursuant to the court's order, the dependency investigator interviewed Father about his Indian ancestry. Father stated he did not know which tribe his ancestors were from, but his aunt Patricia "may be the only relative who has information on this." Father did not have Patricia's contact information. On August 4, 2020 the dependency investigator mailed notice of the jurisdiction hearing to the Bureau of Indian Affairs. The dependency investigator did not attempt to locate Patricia or ask any maternal or paternal relatives about the children's possible Indian ancestry.

At the August 7, 2020 jurisdiction and disposition hearing, the juvenile court found it had no reason to know that ICWA applied. The court explained, "The respective fathers and paternal relatives were unable to offer any information regarding any particular tribes or any other details regarding any potential Indian ancestry." The court did not make a further ICWA finding at the selection and implementation hearing held on August 8, 2023.

C.    *The Juvenile Court Failed To Ensure the Department Complied with ICWA and Cal-ICWA*

Mother contends the Department and the juvenile court did not satisfy their obligations under ICWA and Cal-ICWA because the Department failed to interview the paternal and maternal relatives, including paternal aunt Teriauna R., maternal aunt Maria, and maternal second cousin Kevin M.[7] We agree the Department's inquiry was inadequate, and the violation of Cal-ICWA requires conditional reversal of the section 366.26 orders with directions to comply with ICWA and Cal-ICWA.

As discussed, the dependency investigator interviewed Father about his family's possible Indian ancestry. Father stated that paternal great-aunt Patricia had relevant information, but he did not have her contact information. Father also identified paternal grandmother Raynise C., paternal grandfather Kent C., and an unnamed great-grandmother, but the dependency investigator did not obtain their contact information from Father

---

[7]    The Department is correct that Mother incorrectly identified paternal aunt Shanee H. and paternal grandmother Cheryl T. as K.C.'s paternal relatives. Shanee and Cheryl are the paternal relatives of Ke. C., who is K.C.'s half-sister.

9

or attempt to locate these relatives or Patricia. Similarly, Mother identified two maternal aunts, Brianna R. and Monica R., but neither was asked about K.C.'s possible Indian ancestry. Further, in the course of the Department's investigation, the dependency investigator interviewed maternal relatives Maria, Kevin M., and Mirna, as well as maternal cousin Emily M. and maternal aunt Estela C. The investigator also attempted to interview maternal great-uncle Charles P.

The dependency investigator never asked *any* of these known paternal or maternal relatives about K.C.'s possible Indian ancestry. The Department argues that its failure to inquire of paternal family members, including Teriauna, was not prejudicial because Father identified only paternal great-aunt Patricia as the family member with knowledge of his family's Indian ancestry. But the Department made no effort to obtain Patricia's contact information from the paternal aunt and paternal grandparents or other sources. Moreover, the fact Patricia had information on K.C.'s Indian ancestry does not mean other paternal family members did not.

The Department acknowledges that the social workers also failed to inquire of maternal aunts Maria, Emily, and Monica about K.C.'s possible Indian ancestry (and they did not inquire of Kevin M. or Mirna). However, the Department contends "any error in this regard was harmless" because Mother denied any Indian ancestry on her parental notification form. The Department's contention is meritless.[8]

---

[8] We are troubled by the Department's position in this case that the failure to interview even a single maternal or paternal relative where multiple relatives have been identified is harmless

As the Supreme Court recently explained in *Dezi C.*, "ICWA and Cal-ICWA . . . make clear that the inquiry is not concerned with the outcome, but rather with the protection of tribal rights, including the tribes' right to determine whether a child is an Indian child. '[A]bsent a reasonable inquiry at the outset, the opportunity to gather information relevant to the inquiry is often missed entirely.'" (*Dezi C., supra*, 16 Cal.5th at p. 1144, fn. omitted.) "As required by statute, an adequate initial inquiry that reaches beyond parents to extended family members and others facilitates the discovery of Indian identity, and maximizes the chances that potential Indian children are discovered and tribes are notified." (*Id.* at p. 1140; accord, *Antonio R., supra*, 76 Cal.App.5th at p. 431 [section 224.2, subdivision (b), requires "the Department to inquire of a child's extended family members—regardless of whether the parents deny Indian ancestry"].) Under ICWA, the term "extended family member" is "defined by the law or custom of the Indian child's tribe or, in the absence of such law or custom, shall be a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin or stepparent." (25 U.S.C. § 1903(2); see Welf. & Inst. Code, § 224.1, subd. (c) ["As used in connection with an Indian child custody proceeding, the terms 'extended family member' and 'parent' shall be defined as provided in Section 1903 of the federal Indian Child Welfare Act."].) Thus, the Department had a duty to inquire of the

---

error. In other similar cases the Department has stipulated to a conditional affirmance to ensure expedited compliance with ICWA so that placement of a dependent child is not unnecessarily delayed.

maternal and paternal relatives of K.C.'s possible Indian ancestry.

Here, the Department failed to interview any maternal or paternal relatives regarding K.C.'s possible Indian ancestry. "When a Cal-ICWA inquiry is inadequate, it is impossible to ascertain whether the agency's error is prejudicial." (*Dezi C., supra*, 16 Cal.5th at p. 1136.) Moreover, "[w]hen an inquiry is inadequate, the entities charged with the duty to conduct the inquiry must attempt to cure that error and may not avoid their duty by placing the burden on the parents to demonstrate that the error is prejudicial on an inadequate record." (*Id.* at pp. 1138-1139.) "[E]rror resulting in an inadequate initial Cal-ICWA inquiry requires conditional reversal with directions for the child welfare agency to comply with the inquiry requirement of section 224.2, document its inquiry in compliance with rule 5.481(a)(5), and when necessary, comply with the notice provision of section 224.3." (*Id.* at p. 1136.) Because the Department failed to comply with the inquiry requirements of section 224.2, we conditionally reverse the section 366.26 orders with directions for the Department and the juvenile court to comply with ICWA and Cal-IWCA.

## DISPOSITION

The August 8, 2023 orders granting legal guardianship and terminating jurisdiction over K.C. are conditionally reversed. We remand for the Department and the juvenile court to comply with the inquiry and notice provisions of ICWA and Cal-ICWA consistent with this opinion, including inquiring of the maternal and paternal family members. If the court finds K.C. is an

12

Indian child, it shall conduct a new section 366.26 hearing, as well as all further proceedings, in compliance with ICWA and Cal-ICWA.  If not, the court shall reinstate its original section 366.26 orders.


FEUER, J.

We concur:


MARTINEZ, P.J.


STONE, J.